408 P.2d 707

**STATE LAND BOARD, Plaintiff and Respondent,**

v.

**STATE DEPARTMENT OF FISH AND GAME, Defendant and Appellant.**

**No. 10154.**

Supreme Court of Utah.

Dec. 8, 1965.

Phil L. Hansen, Atty. Gen., Richard L. Dewsnup, Asst. Atty. Gen., Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for respondent.

McDONOUGH, Justice.

The question here presented is whether the language "reserving to the State of Utah, all coal and other minerals, in * * * [certain lands] * * *" retains for the State sand and gravel in said lands as contended by the plaintiff. From a judgment so holding the defendant appeals, contending that it owns the land here in question in fee and absolutely, including the sand and gravel therein.

It is not disputed that the defendant Fish and Game Department acquired and owns in fee, subject to the above reservation, the land in question, being Section 32, Township 3 South, Range 25 East, Salt Lake Meridian, in the Island Park area. The general locality is near the common corner of Utah, Wyoming and Colorado.

Defendant acquired its title through mesne conveyances back to a grant from the State which contained the reservation above referred to as required by Sec. 65-1-15, U.C.A.1953:

"All coal and other mineral deposited in lands belonging to the state of Utah are hereby reserved to the state. Such deposits are reserved from sale, * * * and the purchaser of any lands belonging to the state shall acquire no right, title or interest in or to such deposits, but the rights of such purchaser shall be subject to * * * persons authorized by (the state) to prospect or mine, and to remove such deposits, and to occupy and use so much of the surface of said lands as may be required for all purposes reasonably incident to the mining and removal of such deposits therefrom; * * *."

It is to be conceded that in its broadest sense the term "minerals" would include sand and gravel. In fact under the common cliche that everything is either "animal, vegetable or mineral" the term

would include almost all material substances of the earth, its waters and even the air we breathe. But a reflection upon the semantics of words reveals how unsure and varied are the possibilities of their meanings when considered in the abstract; and that in order to divine the true meaning in any given usage it is necessary to look to the context. Further, with respect to the meaning of statutes, it is appropriate to look to the intended purpose and to the means of accomplishing it by the proper application of the language used.[1]

■ It is advisable to first focus attention upon the subject of the statutory provision, which is "coal and other minerals." Under the well known rules of statutory construction known as ejusdem generis (of the same kind), and noscitur a sociis (know from its associates),[2] the "other minerals" should be understood as something of the same general character as coal or minerals which are usually the subject of prospecting and mining, that is, something more valuable than the land in which they are contained and which are for that reason sought after and extracted from the land by mining, quarrying, or other special means for removal.[3] Supporting this conclusion is the fact that the further language of Sec. 15 quoted above is couched in terms which plainly indicate that it was intended to apply to seeking out and finding precious metals and other minerals of that character, wherein it states that the land shall be subject "to prospect or mine, or to remove such deposits, and * * * for all purposes reasonably incident to the mining and removal of such deposits therefrom."

Sand and gravel are among the most widely occurring materials in the earth's surface and in fact it is composed almost entirely of them in vast areas. This includes much of the terrain of our Rocky Mountain region in which the land in question is situated. If the statute were so construed as to reserve to the grantor these ordinary materials of the earth's surface, the effect in many instances would be to completely nullify the grant, which does not comport with reason.[4]

■ For the reasons stated herein, it is our opinion that the reservation of "coal and other minerals" as required by our statute referred to, was not intended to include sand and gravel, either in the instant case or under usual circumstances. However, we note that the holding herein is not in-

1. See statement in Andrus v. Allred, 17 Utah 2d 106, 404 P.2d 972.
2. See statement in W. S. Hatch Co. v. Public Service Commission, 3 Utah 2d 7, 277 P.2d 809; and Heathman v. Giles, 13 Utah 2d 368, 374 P.2d 839.
3. See Morrison's Mining Rights, 16th Ed., p. 250, wherein it states that, "The best definition of mineral seems to be: any form of earth, rock or metal of greater value while in place than the enclosing country of the superficial soil."
4. See Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228; Beck v. Harvey, 196 Okl. 270, 164 P.2d 399; Farrell v. Sayre, 129 Colo. 368, 270 P.2d 190.

**240**

tended to exclude the possibility that there might be some area where sand and gravel are so scarce and difficult to obtain that a deposit of those materials would have such an extraordinary value within that area that they could properly be considered as coming within the definition of "mineral" as we have hereinabove set out, but that problem is not present here.

Judgment in accordance with this opinion. No costs awarded.

HENRIOD, C. J., and CROCKETT, WADE, and CALLISTER, JJ., concur.