2004 UT 98

David **CARRIER** and Save Our Canyons and its members, Plaintiffs and Appellees,

v.

**SALT LAKE COUNTY,** Salt Lake County Planning Commission and Salt Lake County Board of Adjustment, Defendants and Appellants.

No. 20020946.

Supreme Court of Utah.

Nov. 23, 2004.

Jennifer L. Crane, Jeffrey W. Appel, Salt Lake City, for plaintiffs.

David E. Yocom, Thomas L. Christensen, Salt Lake City, for defendants.

DURRANT, Justice:

¶ 1 This appeal concerns the proposed expansion of a gravel pit in Parley's Canyon. The Salt Lake County Planning Commission ("Planning Commission") and Salt Lake County Board of Adjustments ("Board") approved the expansion after determining that (1) gravel pit operations constitute "mineral extraction and processing" for purposes of the Forestry and Recreation Zone ("FR–20 Zone"), and (2) the applicant petitioned for and presented sufficient evidence justifying the waiver of certain Foothills and Canyon Overlay Zone ("FCOZ") development standards. The district court subsequently reversed this decision, granting summary judgment to a citizens' group challenging the Board's approval.

¶ 2 The primary issue on appeal is whether the Board's approval of the requested gravel pit expansion violated the requirements of the FR–20 Zone and FCOZ. Because we conclude that a gravel pit operation does not qualify as "mineral extraction and processing" and is therefore not a permitted conditional use within the FR–20 Zone, it is unnecessary for us to determine whether the FCOZ waiver requirements for mineral extraction were also satisfied. We affirm the district court.

## BACKGROUND

■ ¶ 3 When reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 2, 70 P.3d 904. We recite the facts of this case accordingly.

¶ 4 This appeal arises out of an application to expand an existing gravel pit located in Parley's Canyon from 11.5 to approximately 62.2 acres.[1] The operation of the pit first began in 1886 and continued intermittently for almost a century until the pit was permanently shut down in 1985 and the site was reclaimed between 1988 and 1991. The gravel pit was later reopened in 1992, when the Planning Commission granted the then-owner of the pit a one-year temporary conditional use permit to extract rock aggregate from a five-acre area. The Planning Commission later made the conditional use permit permanent, at which time the Planning Commission also granted an enlargement of the pit. Apparently, no one objected to or appealed from either the 1992 permit approval or any of the amendments made thereto.

¶ 5 In October 2000, Harper Contracting Inc. ("Harper"), the current owner of the gravel pit, submitted the aforementioned application to expand its gravel pit operations to approximately 62.2 acres. Like the previous applications prior owners had made for alteration of the use permit, Harper characterized its application as an "amendment" to its existing conditional use permit. On February 13, 2001, the Planning Commission approved the application, provided that Harper complied with certain staff recommendations and a proposed operation and remediation plan. In response, plaintiffs David Carrier and Save Our Canyons (collectively "SOC") appealed the Planning Commission's decision to the Board, arguing that the decision to allow gravel pit operations in the expanded area was contrary to the FR–20 and FCOZ zoning requirements.

¶ 6 The approved area of expansion is located within both of these zones. The purpose of the FR–20 Zone is to "permit the development of the foothill and canyon areas of the county for forestry, recreation, and other specified uses to the extent such development is compatible with the protection of the natural and scenic resources of these areas." Salt Lake County, Utah, Code § 19.12.010 (2001). Although "mineral extraction and processing" is listed as a permitted conditional use [2] within the FR–20 Zone,

1. There was some dispute before the district court as to whether the existing gravel pit operation consisted of 11.5 or approximately 36 acres. Because both parties agree as to the 11.5 acre measurement in their briefs, we rely on this number. We note, however, that the dispute as to acreage is irrelevant to our determination of any of the issues raised on appeal.

2. A conditional use is a use that "may be suitable only in certain locations in the county or zoning district, or only if such uses are designed or laid out on the site in a particular manner." Salt Lake County, Utah, Code § 19.84.010 (2001). To engage in a designated conditional use, one must first obtain a conditional use permit from the Planning Commission. *See id.* § 19.84.020, .050. The Planning Commission may only grant a conditional use permit if the evidence presented establishes the following:

A. That the proposed use at the particular location is necessary or desirable to provide a service or facility which will contribute to the general well-being of the neighborhood and the community; and

B. That such use will not, under the circumstances of the particular case, be detrimental to the health, safety or general welfare of persons residing or working in the vicinity, or injurious to property or improvements in the vicinity; and

neither gravel pits nor quarries are expressly authorized. *See id.* § 19.12.030. Due to this omission, SOC argued before the Board that the requested extraction of limestone (which SOC asserted is not a mineral) from Harper's gravel pit is not a permitted conditional use. As such, SOC claimed that the Planning Commission exceeded its authority in classifying Harper's request to expand its gravel pit as an acceptable use under the category of "mineral extraction and processing."

¶ 7 SOC also contested the validity of the Planning Commission's approval with respect to FCOZ, the purpose of which is "to preserve the natural character of the foothills and canyons by establishing standards for foothill and canyon development proposed in the unincorporated areas of [Salt Lake C]ounty." *Id.* § 19.72.010. To achieve this purpose, FCOZ requires all developments located within its boundaries to comply with certain development standards. *See id.* § 19.72.030. FCOZ provides a waiver and modification exception for mineral extraction and processing uses, however, if an individual seeking to waive all or part of the standards (1) petitions for such a waiver or modification; and (2) presents sufficient evidence in compliance with ten enumerated criteria, as deemed applicable by the Planning Commission. *See id.* § 19.72.060. SOC argued that the Planning Commission violated FCOZ's development standards when it approved Harper's request to expand the gravel pit because no waivers with respect to development on ridge lines or steep slopes were either requested by Harper or granted by the Planning Commission.

¶ 8 In response to SOC's arguments, Planning Commission staff submitted a statement on the Planning Commission's behalf explaining why approval of Harper's application was correct. As to the FR–20 Zone challenge, staff conceded that SOC was correct "with respect to the establishment of a *new* [gravel pit] in the FR zone," agreeing that "a *newly-established* quarry or gravel pit would *not* be permitted in the FR zone." However, staff noted that the particular land use at issue had been classified as a "mine" by the Utah Division of Oil, Gas, and Mining ("DOGM") when the conditional use permit was first requested in 1992. Because (1) the property had a "century-plus history of mining operations," (2) the conditional use permit was approved in reliance on the DOGM mining classification in 1992, and (3) the application and its subsequent amendments were all reviewed and approved for compliance with all ordinance requirements applicable at each relevant time, staff asserted that the Planning Commission made no error in either the interpretation or the administration of the FR–20 Zone requirements.

¶ 9 Regarding any potential FCOZ violation, staff argued that the Planning Commission and Harper had fully complied with all waiver procedures. Staff also argued that the Planning Commission was "apprized [sic] of [the ten FCOZ waiver] criteria and the exact nature of the proposal ... and, it is presumed, acted in recognition of them at the time of their approval of [Harper's] conditional use permit amendment."

¶ 10 After hearing these arguments, the Board voted to uphold the Planning Commission's approval of Harper's application to expand its gravel pit operations, largely because "the original approval for [the pit] was granted in 1992 and was never appealed." However, in response to concerns that "the Planning Commission just glossed over many issues when they considered th[e] expansion," the Board remanded the application to the Planning Commission with suggestions for it to (1) "amend definitions ... to [determine] what a gravel pit is as compared to what a mine is," (2) analyze whether FCOZ development waivers were required, and (3) "pay more attention [to] or specifically analyze conditions that would mitigate th[e] expanded conditional use."

¶ 11 On remand from the Board, the Planning Commission once again approved Har-

---

C. That the proposed use will comply with the regulations and conditions specified in [Title 19] for such use; and

D. That the proposed use will conform to the intent of the general master plan.
*Id.* § 19.84.090.

per's application. In so doing, the Planning Commission did not define the terms "gravel pit" and "mine," and determined that waiver of relevant FCOZ development standards was allowed based on evidence supporting only three of the ten enumerated criteria. Following this determination, SOC again appealed to the Board. Unlike the first appeal, the Board voted on this second appeal to uphold the Planning Commission's decision in its entirety. In response, SOC filed a complaint in district court against the Planning Commission, the Board, and Salt Lake County (collectively "the County"), petitioning for judicial review of the Board's decision.

¶ 12 In its complaint, SOC alleged that the Board acted arbitrarily, capriciously, and illegally in upholding the Planning Commission's decision. SOC asked the court to, among other things, (1) declare as a matter of law that the proposed expansion of the Harper's gravel pit is not allowed as a conditional use in the FR–20 Zone, and (2) declare the Planning Commission's approval of the application null and void for failure to follow necessary FCOZ requirements.

¶ 13 Following discovery, both parties filed cross motions for summary judgment. The district court denied the County's motion and granted SOC's motion. In its ruling, the court began its analysis with the proposition that "[s]ince the Planning Commission is a creature of statute, any powers or duties it has are, of necessity, limited to those found in statute or county ordinance." From this premise, the district court reasoned that the County lacked the authority to amend an existing conditional use permit without going through the full permit process. According to the district court, the Planning Commission's powers "are specifically spelled out in statute and ordinance" and the "[m]ere absence of a prohibition" against approving amendments was insufficient to confer amendment authority on the Planning Commission. Thus, the court rejected the County's assertion that the explicit power to approve or deny conditional use permits necessarily conferred the implied power to amend such permits, and concluded

that the Planning Commission was required to determine whether the proposed expansion was either a permitted or conditional use under existing zoning ordinances.

¶ 14 Addressing compliance with FR–20 Zone requirements, the court reasoned that the Planning Commission failed to follow the relevant county ordinances when it approved the use permit "by designating the use as mineral extraction and/or gravel pit interchangeably, without defining either one, or determining whether this use met the requirements of the FR–20 Zon[e] ordinances." It further reasoned that the terms "mineral extraction" and "gravel pit" are not interchangeable, and that the explicit inclusion of gravel pits as authorized uses in other zones, but exclusion in the FR–20 Zone, indicated that gravel pits are not included in the definition of mineral extraction. Consequently, the court concluded that, by approving the application for a gravel pit as if it were an application for mineral extraction, the Planning Commission approved the application in violation of law.

¶ 15 The district court also concluded that even if the conditional use permit had been appropriately issued, the Planning Commission nevertheless failed to adhere to the requirements mandated under FCOZ. According to the district court's interpretation, FCOZ allows for the waiver or modification of development standards only upon evidence that all ten of the requisite criteria have been met, see Salt Lake County, Utah, Code § 19.72.060(C)(5)(a)-(j), with specific reasons provided for each waiver granted, see id. § 19.72.060(C)(6)(b). Because the Planning Commission only addressed three of the ten criteria and failed to set forth reasons justifying the waivers, the court concluded that the Planning Commission violated FCOZ.

¶ 16 As a result, the district court held null and void the Planning Commission's approval of the application for expansion of the gravel pit into the FR–20 Zone, as well as the Planning Commission's approval of the waivers to the FCOZ development standards. The County appeals the district court's deci-

sion. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2003).

## STANDARD OF REVIEW

■ ¶ 17 "When a lower court reviews an order of an administrative agency and we exercise appellate review of the lower court's judgment, we act as if we were reviewing the administrative agency decision directly" and "do not defer, or accord a presumption of correctness, to the lower court's decision." *Cowling v. Bd. of Oil, Gas & Mining*, 830 P.2d 220, 223 (Utah 1991).

## ANALYSIS

### I. SOC'S REQUEST TO STRIKE THE COUNTY'S BRIEF

■ ¶ 18 Before turning to the merits of this case, we first address SOC's request that we strike the County's brief. SOC advances two bases for this request. First, SOC argues that the County's appeal is frivolous because it is "not grounded in fact, not warranted by existing law, [and] not based on a good faith argument to extend, modify, or reverse existing law." Utah R.App. P. 33(b). It asserts that the County has "deliberately misrepresented and misconstrued the facts" that were before the district court, and has made legal arguments that are either without factual or legal support, or are directly contrary to existing authority. "Especially egregious," SOC argues, "is the County's deliberate misconstruction of the [r]ecord and misstatements of fact to support its position." Citing Utah Rule of Appellate Procedure 33(b) and our decision in *Hunt v. Hurst*, 785 P.2d 414 (Utah 1990), SOC argues that, due to the County's alleged misrepresentations, SOC is entitled to attorney fees and costs incurred on this appeal.

¶ 19 Although we agree with SOC that, at times, the County arguably stretches certain facts to cast them in a more favorable light and includes facts in its summary of the argument that are not in the record, the County's brief as a whole is supported by the record, and the County makes good faith arguments that are adequately supported by case law. Moreover, the County's purported misconduct does not rise to the level of that in *Hunt*, a case in which we deemed an appeal frivolous and awarded attorney fees where the non-prevailing party persisted in filing an appeal even though the record was devoid of admissible supporting evidence, and where a professional evaluation would have revealed that the cause of action completely lacked merit. *Id.* at 416–17. We do not deem the inaccuracies contained in the County's brief so egregious as to warrant striking the brief in its entirety and awarding SOC either attorney fees or costs.

■ ¶ 20 We reach a similar result with respect to SOC's second argument for striking the County's brief; namely, that the brief so fails to comply with Utah Rule of Appellate Procedure 24 that we should strike it. Rule 24 of the Utah Rules of Appellate Procedure provides, in relevant part, that "[a]ll statements of facts and references to the proceedings below shall be supported by citations to the record," and that the argument section must contain "citations to authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(7), (9). SOC argues that because the County's brief either fails to include citations to the record or provides inaccurate citations and does not include supporting legal authority for some of its legal assertions, the brief should be stricken and its argument disregarded.

■ ¶ 21 As a general matter, "[t]his court need not, and will not consider any facts not properly cited to, or supported by, the record." *Uckerman v. Lincoln Nat'l Life Ins. Co.*, 588 P.2d 142, 144 (Utah 1978) (declining to consider an appellant's factual allegations where they were either unsupported by the record or not properly cited); *see also Koulis v. Standard Oil Co.*, 746 P.2d 1182, 1184–85 (Utah Ct.App.1987) (disregarding sua sponte an appellant's brief where it was "filled with burdensome, emotional, immaterial and inaccurate arguments," and "only a small proportion of authorities cited … b[ore] any re-

semblance to the propositions for which they [were] cited"). We acknowledge that the County occasionally cites individual pleadings and documents, and often cites the independently paginated administrative record instead of the required pagination of the official court record. *See* Utah R.App. P. 24(e). Although we certainly disapprove of the County's incorrect record citations, we are nevertheless able to adequately navigate the record with the citations provided and do not find that these oversights are equivalent to the errors in either *Uckerman* or *Koulis*.

¶ 22 As for the County's failure to include supporting legal authority for its legal assertions, we observe that the County does, in fact, omit such authority in a few instances. However, we believe an appropriate remedy is to simply disregard the unsupported assertion, and we will do so where appropriate. Thus, we decline SOC's invitation to strike the County's brief and turn our examination to the merits of the issues raised in this case.

## II. THE BOARD ILLEGALLY UPHELD THE PLANNING COMMISSION'S DECISION TO APPROVE HARPER'S APPLICATION FOR AN EXPANDED CONDITIONAL USE

¶ 23 On appeal, the County challenges the district court's rulings that (1) the Planning Commission does not possess the power to amend a conditional use permit without specific legislative authorization; (2) the Planning Commission may not approve a request for an expanded conditional use without complying with all the procedural application requirements mandated for the issuance of a new conditional use permit; (3) the Planning Commission violated the Salt Lake County Code when it processed and approved Harper's application for an expanded gravel pit on the basis that a gravel pit constitutes "mineral extraction" for purposes of the FR–20 Zone ordinances; and (4) the Planning Commission violated the Salt Lake County Code when it granted, without justification, waivers to the FCOZ development standards after considering only three of the ten criteria set forth under the applicable FCOZ ordinances.

¶ 24 As to the first two arguments, the County contended, both before the district court and in its appellate briefs before this court, that because the Planning Commission was merely amending a previously approved conditional use permit, "[n]o waivers under FCOZ or conditional use approval under FR–20 [were] required." This assertion is presumably the basis for the County's position that the expanded gravel pit operation is a permissible use if viewed as an *amendment,* but would not be acceptable if processed as a new use. However, at oral argument, the County conceded that even an amendment to an existing conditional use permit would be subject to existing zoning ordinances, including the current FR–20 Zone and FCOZ ordinances. Given this concession and our analysis regarding compliance with applicable zoning ordinances, *see infra* Part II.B., it is unnecessary for us to address whether the Planning Commission has the power to amend existing use permits, and if so, whether the desired expansion of the gravel pit at issue in this case can be properly characterized as an amendment, or whether the Planning Commission must process this amended conditional use application by following the same procedures required for new conditional uses. We turn instead to whether the Board acted within the confines of the relevant zoning ordinances when it upheld the Planning Commission's approval of Harper's requested expansion of its conditional use permit.

### A. Standard of Review

¶ 25 The County Land Use Development and Management Act ("CLUDMA"), Utah Code Ann. §§ 17–27–101 to –1003 (2003), governs appeals from county land use decisions and provides that "[a]ny person adversely affected by any decision of a board of adjustment may petition the district court for a review of the decision," *id.* § 17–27–708(1); *see also id.* § 17–27–1001(2)(a). When reviewing such a decision, a district court is required to "presume that land use decisions

... are valid," *id.* § 17–27–1001(3)(a)(i), and may decide only "whether the board of adjustment's decision is arbitrary, capricious, or illegal," *id.* § 17–27–708(2)(a); *see also id.* § 17–27–1001(3)(a)(ii) ("The court shall ... determine only whether or not the decision is arbitrary, capricious, or illegal."). For purposes of CLUDMA, the term "illegality" is "a determination that the board of adjustment's decision violates a statute, ordinance, or existing law." *Id.* § 17–27–708(2)(b).

¶ 26 Although this court has never had occasion to address CLUDMA's statutory standards for reviewing a county board's land use decision, the Utah Court of Appeals has correctly observed that CLUDMA contemplates two distinct types of review: (1) review for whether a board's decision was conducted in an arbitrary or capricious manner, and (2) review for whether the board's decision illegally violated a statute, ordinance, or existing law. *Patterson v. Utah County Bd. of Adjustment*, 893 P.2d 602, 603–04 (Utah Ct.App.1995).[3] By upholding the Planning Commission's decision to allow the expanded gravel pit operation in the FR–20 Zone, the Board necessarily agreed with the Planning Commission's implicit interpretation that the term "mineral extraction" was broad enough to encompass gravel pit operations. SOC argues that this interpretation implicates the second type of review and asserts that we should review the interpretation for correctness, granting no deference to either the Planning Commission or the Board. In support of this assertion, SOC cites *Brown v. Sandy City Board of Adjustment*, 957 P.2d 207 (Utah Ct.App.1998), in

which the court of appeals stated, "[T]he law in Utah is clear that interpretation of the meaning of zoning ordinances by a board of adjustment is not entitled to deference."[4] *Id.* at 210 n.5; *see also Town of Alta v. Ben Hame Corp.*, 836 P.2d 797, 800 (Utah Ct.App. 1992) (noting that "the interpretation of a statute or zoning ordinance is a question of law for the court"). We acknowledge that several jurisdictions have adopted the no deference standard of review articulated by the Utah Court of Appeals.[5] However, we believe that such a standard fails to properly account for the expertise possessed by local governing bodies and the aid such expertise could lend to our interpretation of the ordinances those bodies are charged with regularly administering. We acknowledged as much in *Cottonwood Heights Citizens Ass'n v. Board of Commissioners*, 593 P.2d 138 (Utah 1979), when we explained that "[d]ue to the complexity of factors involved in the matter of zoning, as in other fields where courts review the actions of administrative bodies, it should be assumed that those charged with that responsibility ... have specialized knowledge in that field" and "should be allowed a comparatively wide latitude of discretion." *Id.* at 140.

¶ 27 Seizing on this concept of discretion, the County argues that we should review the Planning Commission's interpretation of the FR–20 Zone ordinances only to determine whether that interpretation is arbitrary or capricious. In support of this assertion, the County cites our decision in *Associated General Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, 38 P.3d 291, in which we observed that the expertise and authority

---

**3.** The court of appeals made this determination based on the 1991 version of CLUDMA. Although the language under the current CLUDMA provision has changed slightly since *Patterson* was decided, it nevertheless continues to clearly delineate the two distinct types of review articulated by the court of appeals. *Compare* Utah Code Ann. § 17–27–708(2) (1991), *with id.* § 17–27–708(2)(a) (2003).

**4.** The court of appeals made this analysis in the context of the Municipal Land Use Development and Management Act, which is, for all relevant purposes, identical to CLUDMA.

**5.** *See City of Foley Bd. of Adjustments & Appeals v. H & S S. Graphics Sys., Inc.*, 878 So.2d 294, 297 (Ala.2003); *Badell's Auto Body, Inc. v. New Castle County Bd. of Adjustment*, No. 01A–07–008–RSG, 2002 WL 31028573, at *2, 2002 Del.Super. LEXIS 194, at *9–10 (Del. Aug. 28, 2002); *Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3, 836 A.2d 1285; *Thomas v. Zoning Hearing Bd.*, 121 Pa.Cmwlth. 393, 550 A.2d 1045, 1046 n. 2 (1988); *Burley Lagoon Improvement Ass'n v. Pierce County*, 38 Wash.App. 534, 686 P.2d 503, 505 (1984).

of the Utah Board of Oil, Gas, and Mining placed it "in a better position than the judiciary to interpret terms specific to the mining industry—including sand, gravel, and rock aggregate," and reviewed that board's interpretation of its enabling statute only to determine whether it was arbitrary and capricious. *Id.* at ¶ 19.

¶ 28 We acknowledge that, like state agencies, local county planning commissions and boards possess a certain degree of "specialized knowledge" in their fields. This is precisely why courts afford local commissions and boards acting within the boundaries established by applicable statutes and ordinances " 'broad latitude of discretion' " and afford their factual and legislative policy-making decisions " 'a strong presumption of validity.' " *Patterson,* 893 P.2d at 604 (quoting *Thurston v. Cache County,* 626 P.2d 440, 445 (Utah 1981)). However, local commissions and boards do not possess the same degree of professional and technical expertise as their state agency counterparts, *cf. Isis Dev., LLC v. Town of Wells,* 2003 ME 149, ¶ 3 n. 4, 836 A.2d 1285 (noting that unlike state agencies' interpretations of state statutes or regulations, which are afforded broad deference, local volunteer boards' interpretations of zoning ordinances are reviewed de novo), and it would be inappropriate to subordinate the traditional role of the courts in interpreting legislation to commissions and boards who are concededly comprised of "laymen." We believe a better approach is that adopted by those jurisdictions that review a local agency's interpretation of ordinances for correctness, but also afford some level of non-binding deference to the interpretation advanced by the local agency.[6] This intermediate approach provides a proper balance by affording respect to the local agency's specialized knowledge while ensuring that the interpretation of ordinances and statutes remains firmly within the province of the courts. We apply this standard here.

### B. The Term "Mineral Extraction" in the FR–20 Zone Ordinance Does Not Encompass "Gravel Pits"

¶ 29 The relevant FR–20 Zone ordinance allows for a number of specific conditional uses, including "[m]ineral extraction and processing." Salt Lake County, Utah, Code § 19.12.030 (2001). Although the County concedes that this ordinance does not specifically list "gravel pits" as a permitted conditional use, it argues that the term "mineral extraction" is broad enough to encompass gravel pit operations, and that the Planning Commission did not violate FR–20 Zone requirements when it approved Harper's application for an "amendment" to its conditional use permit. We disagree.

¶ 30 In interpreting the meaning of a statute or ordinance, we begin first by looking to the plain language of the ordinance. *Biddle v. Wash. Terrace City,* 1999 UT 110, ¶ 14, 993 P.2d 875. When examining the plain language, we must assume that each term included in the ordinance was used advisedly. *Id.* Additionally, "statutory construction presumes that the expression of one should be interpreted as the exclusion of another." *Id.* Thus, we should give effect to any omission in the ordinance language by presuming that the omission is purposeful. *Id.*

¶ 31 If the plain language of the ordinance is ambiguous, we may resort to other modes of construction. *O'Keefe v. Utah State Ret. Bd.,* 956 P.2d 279, 281 (Utah 1998). In so doing, however, we must keep

---

6. *See Redelsperger v. City of Avondale,* 207 Ariz. 430, 87 P.3d 843, 848 (Ct.App.2004) ("Although the City's interpretation of its [z]oning [o]rdinance should be accorded some weight, it is not binding on this court."); *City of New Hampton v. Blayne–Martin Corp.,* 594 N.W.2d 40, 44 (Iowa 1999) ("Although an agency is entitled to some deference in the interpretation of rules and statutes it administers, final construction and inter-pretation of pertinent law is always a question of law for this court."); *Clear Channel Outdoor Adver., Inc. v. City of St. Paul,* 675 N.W.2d 343, 347–48 (Minn.Ct.App.2004) (acknowledging "the general deference given to a municipal interpretation" but nevertheless reviewing municipal interpretations of local zoning ordinances de novo).

in mind that "[w]hen interpreting a[n ordinance], it is axiomatic that this court's primary goal 'is to give effect to the [county's] intent in light of the purpose that the [ordinance] was meant to achieve.' " *Biddle,* 1999 UT 110 at ¶ 14, 993 P.2d 875 (quoting *Evans v. Utah,* 963 P.2d 177, 184 (Utah 1998)). Since zoning ordinances are in derogation of a property owner's use of land, we are also cognizant that any ordinance prohibiting a proposed use should be strictly construed in favor of allowing the use. *See Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 606 (Utah Ct.App.1995).

¶ 32 In this case, we are persuaded that "mineral extraction and processing" does not encompass gravel pit operations. In its broadest sense, the term "mineral" necessarily encompasses the term "gravel." *See* Merriam–Webster's Collegiate Dictionary (11th ed.2003) (defining "mineral" as "any of various naturally occurring homogenous substances ... obtained usu[ally] from the ground"). Whether the term "mineral" actually incorporates the term "gravel" in any given situation, however, is largely contextual. The Tenth Circuit Court of Appeals observed this principle when it noted that

> "[m]ineral" is a word of general language, and not per se a term of art. It does not have a definite meaning. It is used in many senses. It is not capable of a definition of universal application, but is susceptible to limitation or expansion according to the intention with which it is used in the particular instrument or statute. Regard must be had to the language of the instrument in which it occurs, the relative position of the parties interested and the substance of the transaction which the instrument embodies.

*Bumpus v. United States,* 325 F.2d 264, 266 (10th Cir.1963) (footnotes omitted).

¶ 33 This court relied upon a contextual definition of the term "mineral" in *State Land Board v. State Department of Fish & Game,* 17 Utah 2d 237, 408 P.2d 707 (1965). In that case, we were called upon to determine whether statutory language "reserving to the State of Utah, all coal and other minerals" included the reservation of sand and gravel. *Id.* at 707. We began our analysis with the observation that "in its broadest sense[,] the term 'minerals' would include sand and gravel." *Id.* at 708. However, we stated that "in order to divine the true meaning in any given usage," it is necessary to look to both the context in which the term is used as well as the "intended purpose and means of accomplishing it by the proper application of the language used." *Id.* Since the term "other minerals" was juxtaposed with the term "coal," we reasoned that "other minerals" referred to "something of the same general character as coal or minerals which are usually the subject of prospecting and mining." *Id.* Because the earth's surface is largely composed of sand and gravel, including much of the Rocky Mountain region in which the relevant land was situated, we concluded that to construe the statute to reserve to the grantor the right to extract these ordinary materials would operate "to completely nullify the grant." *Id.* Given this unreasonable result, we held that the term "mineral" was not intended to include sand and gravel, "either in the instant case or under usual circumstances." *Id.* at 708–09.

¶ 34 In this case, both parties cite various courts that have interpreted the term "mineral" as either including or excluding the term "gravel," and argue that these holdings support their respective interpretations. *Compare, e.g., Norken Corp. v. McGahan,* 823 P.2d 622, 627–28 (Alaska 1991) (finding gravel not to be a mineral for purposes of a reservation in a deed), *and Bambauer v. Menjoulet,* 214 Cal.App.2d 871, 873–75, 29 Cal.Rptr. 874 (1963) (same), *and Miller Land & Mineral Co. v. State Highway Comm'n,* 757 P.2d 1001, 1004 (Wyo.1988) (same), *with Watt v. W. Nuclear Inc.,* 462 U.S. 36, 56–59, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983) (gravel is a mineral for purposes of the federal Stock–Raising Homestead Act), *and Adams v. Chilcott,* 182 Mont. 511, 597 P.2d 1140, 1144 (1979) (finding parties intended mineral rights to include sand and gravel in the context of a contract to sell property). Rath-

er than support the proposition that "mineral" generally encompasses, or excludes, "gravel," however, these cases merely reinforce the conclusion that whether gravel is appropriately deemed a mineral depends on the context in which the term is used. In this case, we are persuaded that gravel is not a mineral for purposes of the FR–20 Zone ordinances.

¶ 35 First, we observe that the term "gravel pit" is specifically listed as a conditional use in both the S–1–G Zone, Salt Lake County, Utah, Code § 19.42.030, a zone whose purpose is to "permit extraction of gravel and similar natural resources in the county," *id.* § 19.42.010, and in the M–2 Zone, *id.* § 19.68.030, a zone meant to "provide areas in the county for heavy industrial uses," *id.* § 19.68.010. Applying the assumption that each term in the ordinances was used advisedly, and giving effect to the fact that the term "gravel pits" is explicitly used in other ordinances but omitted from the FR–20 Zone ordinance, *see Biddle,* 1999 UT 110 at ¶ 14, 993 P.2d 875, the omission of "gravel pits" as an enumerated permitted conditional use suggests that a gravel pit operation is not an authorized conditional use in the FR–20 Zone.

¶ 36 The allowance of a gravel pit operation also appears to be inconsistent with the stated purpose of the FR–20 Zone, which is "to permit the development of the foothill and canyon areas of the county for forestry, recreation, and other specified uses to the extent that such development is compatible with the protection of the natural and scenic resources of these areas for the continued benefit of future generations." Salt Lake County, Utah, Code § 19.12.010. The considerable damage that would necessarily result to both the natural and scenic resources from any gravel pit operation would be inconsistent with this purpose.

¶ 37 The County argues that the various conditions with which the FR–20 Zone ordinance mandates compliance for mineral extraction and processing operations, including those relating to "noise, odor, vibrations, dust, blowing debris, hazardous material, and air quality," as well as site grading, drainage, and landscaping, *id.* § 19.12.030(J)(1), (10), (11), (15), are more commonly associated with surface gravel operations than with underground shaft mining. It asserts that these conditions suggest the ordinance contemplates gravel pit operations. We disagree. The conditions upon which the County relies could just as easily apply to underground mining operations. In fact, the establishment of "underground record storage vaults," a permitted conditional use in the same ordinance, requires compliance with similar conditions relating to grading, draining, rehabilitation and landscaping, as well as protection of wildlife habitats, trees and vegetation. *Id.* § 19.12.030(R). Given that the stated purpose of the FR–20 Zone is to protect natural and scenic resources, we are persuaded that these conditions address the consequences resulting from underground shaft mining operations-not gravel pits.

¶ 38 Finally, we also find it instructive that under Utah's Mined Land Reclamation Act, Utah Code Ann. §§ 40–8–1 to –23 (1998 & Supp.2004), sand, gravel, and rock aggregate are explicitly excluded from the definition of the term "mineral deposit," *id.* § 40–8–4(6)(a) (Supp.2004), and the extraction of sand, gravel, and rock aggregate is explicitly excluded from the definition of the term "mining operation," *id.* § 40–8–4(14)(a). This suggests that gravel pit operations are not necessarily included within the context of other types of mineral extractions, and that it is reasonable to interpret the term "mineral extraction and processing" to exclude gravel pit operations.

¶ 39 We acknowledge that, in accordance with the intermediate standard previously articulated, a local agency's interpretation of an ordinance is generally entitled to some deference, and that in close cases such an interpretation may be a determinative factor in choosing a particular interpretation over another. However, this is not such a case. Moreover, even if this were a close case, we would be disinclined to afford much weight, if any, to the Planning Commission's position that "mineral extraction" is broad enough to encompass gravel pit operations.

¶ 40 It is evident from our review of the record, as well as from the arguments made on appeal, that the Planning Commission's interpretation is driven largely by the fact that it desires to allow Harper's gravel pit operations in exchange for Harper's agreement to reclaim the area when operations are completed. Although we take no issue with the Planning Commission's remediation goal, we doubt that the Planning Commission would be taking the same position before us if the issue on appeal concerned the Planning Commission's denial of an application for a conditional use permit to operate a new gravel pit in the same area. The County's acknowledgment that the Planning Commission structured Harper's application as an amendment, rather than a new application, "to avoid the current restrictions on new development" and to refrain from setting a "dangerous precedent" that would "open[ ] the door for all kinds of new surface mining in the canyons," leads us to conclude that the Planning Commission's proposed interpretation in this case has been influenced largely by its desired outcome—not by its specialized knowledge or expertise in the area. Accordingly, we decline to assign any great significance to its interpretation here. *Cf. Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 609 (Minn.1980) (concluding that a city's interpretation of an ordinance was not entitled to the court's usual respect where the city council redefined an ordinance term in order to prohibit a specific plaintiff from establishing a business in a particular zoning area).

¶ 41 Thus, because the term "gravel pits" is specifically omitted from the FR–20 Zone but included in the M–2 and S–1–G Zones, and because gravel pit operations are inconsistent with the stated purpose of the FR–20 Zone, we hold that "mineral extraction and processing," as that phrase is used in the FR–20 Zone ordinances, does not encompass gravel pit operations. Consequently, by approving the Planning Commission's grant of Harper's request to expand its gravel pit operations located within the FR–20 Zone, the Board violated a County ordinance and therefore acted illegally within the context of CLUDMA. Given this holding, it is unnecessary for us to examine whether the Board's approval also violated FCOZ.

### III.   ATTORNEY FEES

¶ 42 Finally, we address SOC's request for attorney fees under the private attorney general doctrine. As a general rule, attorney fees are not recoverable by a prevailing party in the absence of statutory or contractual authorization. *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). However, a party may recover attorney fees in some instances under the private attorney general doctrine exception. *Id.* at 783. In *Stewart*, we held that the invocation of this exception is appropriate only when the "vindication of a strong or societally important public policy takes place and the necessary costs in doing so transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization." *Id.* (internal quotations omitted); *see also Shipman v. Evans*, 2004 UT 44, ¶ 24, 100 P.3d 1151. We further cautioned that to invoke this exception requires an "extraordinary case." *Stewart*, 885 P.2d at 783 n. 19.

¶ 43 We need not decide whether circumstances in this case rise to the level contemplated by *Stewart* for two reasons. First, SOC failed to preserve the issue by raising it before the district court, and as a general rule we decline to address issues raised for the first time on appeal. *Crank v. Utah Judicial Council*, 2001 UT 8, ¶ 43 n. 17, 20 P.3d 307. Second, even if the issue had been properly preserved, SOC has failed to sufficiently brief the issue on appeal. Because "[i]t is well established that a reviewing court will not address arguments that are not adequately briefed," *State v. Thomas*, 961 P.2d 299, 304 (Utah 1998), we reject SOC's request for attorney fees.

### CONCLUSION

¶ 44 The term "mineral extraction and processing" does not encompass gravel pit

operations for purposes of the FR–20 Zone ordinances. Accordingly, the district court correctly held that the Board acted illegally when it upheld the Planning Commission's decision to approve Harper's request to expand its existing gravel pit operations. We affirm the district court's grant of summary judgment.

¶ 45 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT'S opinion.