2007 UT App 315

**M & S COX INVESTMENTS, LLC, a Utah limited liability company; Mervyn Cox; and Sue Cox, Plaintiffs and Appellants,**

v.

**PROVO CITY CORPORATION, Defendant and Appellee.**

No. 20060386–CA.

Court of Appeals of Utah.

Sept. 27, 2007.

---

Reed L. Martineau, Salt Lake City, for Appellants.

Jody K. Burnett, Salt Lake City, and David C. Dixon, Provo, for Appellee.

Before Judges BILLINGS, McHUGH, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiffs M & S Cox Investments, LLC, and Mervyn and Sue Cox (collectively, Cox) appeal two trial court orders. First, Cox appeals the trial court's grant of summary judgment to Defendant Provo City Corporation (the City). Second, Cox appeals the trial court's intervention order. We affirm.

## BACKGROUND

¶ 2 In 1996, Cox acquired residential property (the Property) in Provo, Utah, for $192,624. At the time of Cox's purchase, the Property was zoned as R1–Single Family Residential with an "S" Supplementary Residential Overlay. The S–Overlay zoning provision permitted Cox to maintain an accessory dwelling unit in addition to the home's normal dwelling unit. Zoning regulations did not require that Cox, as owner, occupy the home.

¶ 3 Following purchase, Cox spent over $500,000 remodeling and updating the Property to take advantage of the S–Overlay Provisions. Specifically, Cox created two separate dwelling units that allowed Mr. and Mrs. Cox's relatives to live in the Property, for little or no rent, while attending educational institutions in Utah County. Mr. and Mrs. Cox are residents of St. George, Utah.

¶ 4 In April 2000, the City amended its zoning ordinance (the Ordinance) to require that homes within the S–Overlay zone, including the Property, be owner-occupied if the home owner wishes to rent the accessory dwelling unit. The purpose of the Ordinance was to maintain the residential atmosphere of the neighborhood while accommodating the need for off-campus housing for Brigham Young University students.

¶ 5 To aid non-resident owners of affected properties, the Ordinance permitted such owners to apply to the City's Community Development Director (CDD) for an extension to bring properties into compliance. In determining the appropriate amortization period for affected properties, the CDD used a mathematical formula set forth in the Ordinance. The formula provides:

> The time period during which an owner may recover the amount of his investment in property affected by [the Ordinance] shall be determined by dividing the residual value of the property by the average monthly net rental income from the property. The resulting figure is the number

of months which the owner shall have to recover his investment in the property. Provo, Utah, Code § 14.30.090(2)(a) (2000). Under the Ordinance, " 'Residual value' means the difference between a property's adjusted present value and its compliance value as of April 4, 2000," [1] and " '[a]djusted present value' means a property's original purchase price plus any capital improvements and less depreciation and net income from the property, all as adjusted for inflation to April 4, 2000." *Id.* §§ 14.30.090(2)(a)(ii), (iv). The Ordinance does not define "average monthly net rental income" as used in the formula, nor does it define "net income" as used in the definition of adjusted present value.

¶ 6 In November 2000, Cox filed a complaint against the City (Case no. 000403654), alleging that the Ordinance as applied to Cox violated the Utah Constitution and was facially unenforceable as it exceeded the City's power to regulate land use. Cox also sought judgment declaring that then-numbered Utah Code section 10–9–408, *see* Utah Code Ann. § 10–9–408 (2000) (current version at Utah Code Ann. § 10–9a–511 (Supp.2007)), to the extent that it permits the City to adopt the Ordinance, is unconstitutional as applied to Cox. The City answered Cox's complaint and subsequently moved for summary judgment. In its motion for summary judgment, the City argued that Cox's facial challenge to the Ordinance failed as a matter of law and that Cox failed to exhaust its administrative remedies by not first applying for amortization under the Ordinance.

¶ 7 In March 2002, Cox submitted an application for determination of its amortization period. In its application, Cox relied on its average net rental incomes from 1996 to 2000, calculated after depreciation, to argue that the Property's net income is a negative value and therefore Cox is entitled to an infinite amount of time to bring the Property into compliance with the Ordinance.

¶ 8 Sometime after Cox submitted its amortization application, Cox and the City entered into settlement negotiations. During the settlement negotiations, the City emphasized to Cox that any agreement reached by the parties was conditional and would not be binding unless approved by the City Council. In November 2002, the City sent Cox an outline of a possible settlement agreement in which Cox would receive permanent exemption status.

¶ 9 In January 2003, several Provo residents filed a petition for intervention. The trial court granted this petition in March 2003. One month later, the City informed Cox that the settlement offer "as currently framed" was unacceptable. The City requested additional information from Cox, and upon reviewing this information, decided against granting Cox permanent exemption from the Ordinance's owner-occupancy requirements.

¶ 10 Using the values Cox supplied in its application, but relying on these values before depreciation and adjusting them for inflation, the City calculated Cox's amortization period as 22.11 years. In making its calculation, the City calculated Cox's net income from 1996 to 2000 as ($27,004.60),[2] and its average monthly net income as $1,322.59. The City interpreted the Ordinance's term "average monthly net income" as meaning fair market rental value. Thus, in making its average monthly net income calculation, the City only relied on years 1999 to 2000 because from 1996 to 1998 the Property was undergoing major capital improvements and therefore rental figures from this construction period did not reflect the fair rental market value of the Property. From 1999 to 2000, the average monthly net income was a positive number, whereas from 1996 to 1998, the average monthly net income was a negative number.

¶ 11 In a March 9, 2004 letter to Cox, the City advised Cox of the calculated amortization period and explained that because Cox had already received three years to recover on its investment (from April 4, 2000 to April 4, 2003), the remaining investment recovery

---

1. " 'Compliance value' means the appraised value of the property on April 4, 2000 . . . ." Provo, Utah, Code § 14.30.090(2)(a)(iii) (2000).

2. Consistent with common accounting practices and the parties' own accounting documents, we use parentheses to indicate negative values.

period, as of April 4, 2003, was nineteen years and three months. Thus, the City stated, "[Cox] must come into compliance with the occupancy standards set out in [the Ordinance] no later than ... July 4, 2022."

¶ 12 Cox subsequently appealed the City's amortization determination to the Board of Adjustment (the Board), arguing that the City's calculation was both arbitrary and illegal. Specifically, Cox averred that the City violated the Ordinance in using two different figures for its calculations of "average monthly net rental income" and "net income from the property," and that this violation resulted in a dramatically shorter amortization period than the "infinite" period to which Cox claimed it was entitled.

¶ 13 In response, the City argued that an amortization period, by its very definition, cannot be infinite, and an infinite amortization period is inconsistent with the language and purpose of the Ordinance. Therefore, the City asserted, where the Ordinance fails to define "average monthly net rental income" and "net income from the property," the City could reasonably interpret the Ordinance as requiring consideration of fair market rental value in determining the "average monthly net rental income."

¶ 14 The Board agreed with the City, finding that the City's amortization period determination for the Property was "based on the assumption of an average monthly net rental income at fair market value" and that this assumption was reasonable because "average monthly net rental income is not defined" under the Ordinance.

¶ 15 In June 2004, Cox appealed the Board's ruling to the trial court (Case no. 040402050). In August 2005, the City and Cox moved to consolidate Case no. 000403654—Cox's lawsuit against the City—and Case no. 040402050—Cox's appeal of the Board's decision in favor of the City. In their joint motion to consolidate, the parties stated that they were making the motion because "both cases involve[d] common questions of law and fact."

¶ 16 In October 2005, the City moved for summary judgment "on all the claims asserted in th[e] consolidated action." In its mem-

orandum in support of its motion, the City argued that Cox's facial claims fail as a matter of law based on the 2005 Utah Supreme Court decision *Anderson v. Provo City Corp.*, 2005 UT 5, 108 P.3d 701, and that "all that remains in this consolidated action is the as-applied challenge which has been distilled into the issue of whether the City's amortization determination was arbitrary, capricious or illegal." Cox subsequently cross-motioned for summary judgment, requesting that the trial court rule that the Board's decision was illegal, arbitrary, or capricious. Cox did not mention, in either its cross-motion or its motion in opposition to the City's motion, the City's assertion that the only remaining issue in the case was Cox's as-applied challenge and that this challenge boiled down to the sole issue of whether the City's amortization determination was arbitrary, illegal, or capricious. The trial court heard oral argument on the parties' motions in January 2006 and ultimately awarded summary judgment in favor of the City. In so doing, the trial court concluded that the City's amortization analysis was not illegal and was supported by substantial evidence. The court explained that the Ordinance's amortization "time period" requires a definite amount of time and cannot be interpreted as infinite. The court stated, "An amortization period which does not ultimately terminate the nonconforming use fails to fulfill its essential purpose and undermines the purpose and effect of local zoning ordinances." The trial court further opined that interpreting the Ordinance to require a definitive amortization time period gives proper weight to the public's interest in maintaining a residential atmosphere.

¶ 17 Cox subsequently objected to the proposed summary judgment order, claiming the proposed order "improperly asserts that the matter came up for summary judgment on all the claims asserted in this consolidated action." (quotations and emphasis omitted). Although Cox conceded that its facial claims were essentially resolved by the supreme court's decision in *Anderson*, it contended that its " 'as applied' challenges have never been litigated, have never been briefed ..., have never been argued ..., and have never been addressed or decided [by the court]." The trial court overruled Cox's objection to

the proposed summary judgment order. The trial court concluded that Cox's facial challenges were resolved by *Anderson* and that there was no basis for Cox's assertion that its as-applied challenges had not been before the court. Specifically, the trial court stated that when the two actions were consolidated in August 2005, the consolidation was done at both parties' request and was based on the parties' assertion "that both cases involve common questions of law and fact." Further, the court pointed out that the City moved for summary judgment on all claims asserted in the consolidated action and that after reviewing the parties' motions and listening to oral arguments, the court was convinced that the sole issue was whether the Ordinance's amortization provisions were invalid as applied to Cox. The trial court further noted that Cox responded to the City's motion for summary judgment and "had ample opportunity to argue all [its] claims in both its memoranda and at oral arguments before th[e c]ourt." The trial court subsequently entered its order of summary judgment, dismissing, with prejudice, "[Cox's c]omplaint, together with all claims and theories asserted therein in this consolidated action."

¶ 18 Cox appeals both the trial court's summary judgment order and its grant of the petition for intervention.

## ISSUES AND STANDARDS OF REVIEW

■■■ ¶ 19 First, Cox challenges the trial court's award of summary judgment to the City. Specifically, Cox argues that the trial court erred in determining that the Board did not act arbitrarily, capriciously, or illegally in upholding the City's amortization determination. Cox also claims that the trial court erred in deciding that its summary judgment order disposed of all Cox's claims. It is well established that "[s]ummary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Norman v. Arnold,* 2002 UT 81, ¶ 15, 57 P.3d 997; *see also* Utah R. Civ. P. 56(c). Accordingly, "[w]e review the [trial] court's entry of summary judgment for correctness," *Wilcox v. Anchor Wate Co.,* 2007 UT 39, ¶ 10, 164 P.3d 353, and "view the

facts and all reasonable inferences drawn therefrom in the light most favorable to [Cox,] the nonmoving party," *Carrier v. Salt Lake County,* 2004 UT 98, ¶ 3, 104 P.3d 1208. Furthermore, as to the trial court's determination that the Board correctly upheld the City's amortization calculation, " 'we act as if we were reviewing the administrative agency decision directly' and 'do not defer, or accord a presumption of correctness, to the lower court's decision.' " *Id.* at ¶ 17 (quoting *Cowling v. Board of Oil, Gas & Mining,* 830 P.2d 220, 223 (Utah 1991)).

■■■ ¶ 20 Second, Cox asserts that the trial court improperly granted the petition for intervention. We review a trial court's decision to allow intervention as of right for correctness, *see In re Marriage of Gonzalez,* 2000 UT 28, ¶ 16, 1 P.3d 1074, and its decision to grant permissive intervention for an abuse of discretion, *see* Utah R. Civ. P. 24(b).

## ANALYSIS

¶ 21 Cox contests the trial court's summary judgment ruling on two grounds. First, Cox contends the trial court erred in determining the summary judgment order disposed of all Cox's claims. Second, Cox argues that the court erroneously determined that the Board did not act arbitrarily, capriciously, or illegally in upholding the City's amortization determination.

### A. Disposal of All Claims

■■■ ¶ 22 Cox argues the trial court erred in awarding summary judgment on all its claims. As earlier noted, this case is a consolidation of Cox's lawsuit against the City, in which Cox asserted facial and as-applied constitutional violations, and its administrative appeal of the City's amortization calculation. In support of their joint motion for consolidation, the parties stated that the two cases "shared common questions of fact and questions of law." After consolidation, the City moved for summary judgment "on all the claims asserted in th[e] consolidated action." In its memorandum in support of its motion, the City further stated that because a recent Utah Supreme Court case, *Anderson v. Provo City Corp.,* 2005 UT 5,

108 P.3d 701, disposed of Cox's facial claims in the instant case, "all that remains in th[e] consolidated action is the as-applied challenge which has been distilled into the issue of whether the City's amortization determination was arbitrary, capricious, or illegal."

■ ¶ 23 In both its memorandum in opposition to the City's motion for summary judgment, and in support of its own cross-motion for summary judgment, Cox failed to clarify for the trial court that the amortization determination challenge was only one of several remaining issues in the case. Cox's own motion for summary judgment was notably not captioned as a motion for partial summary judgment even though the motion only refers to the amortization determination,[3] and Cox's combined memorandum in support of its motion and in opposition to the City's motion alludes only to the amortization issue.

¶ 24 At oral argument on the motions, Cox alleges that its "first statement to the [c]ourt . . . was to identify the two main issues remaining in the lawsuit, i.e., 'as applied' and 'amortization,' and to advise the [c]ourt that only the amortization issues, and not the as-applied issues, were before the [c]ourt." Cox provides no record cite in support of this supposed statement, and the City contests it.[4] We do not find any record support for Cox's alleged statement, but we note that for unexplained reasons the first part of the summary judgment hearing is not transcribed and thus not contained in the record.

¶ 25 The trial court, in overruling Cox's objections to the proposed order dismissing all of Cox's claims, concluded that there was no basis for Cox's claim that its as-applied challenges had never been briefed, argued, or decided. Specifically, the trial court found that the cases were consolidated by joint motion on grounds of common issues of fact and law; the City moved for summary judgment on all claims in the consolidated action; Cox had plenty of opportunity in its memoranda and at oral argument to assert its

other claims; and the court "was persuaded by [the City] that the sole issue to decide was whether the amortization provisions of the [O]rdinance as applied to the . . . [P]roperty were valid."

¶ 26 We affirm the trial court's decision to dispose of all of Cox's claims in its summary judgment order. First, Cox can only blame itself for not carefully reading the City's motion for summary judgment and for not making it clear in either its motion in opposition or in its own cross-motion that the amortization determination was not the only remaining issue in the case. Second, we agree with the trial court that because the parties jointly asserted that the consolidated cases share common questions of law and because the amortization determination is reasonable and lawful, there are no remaining issues concerning an as applied unconstitutional taking. *See View Condo. Owners Assoc. v. MSICO, L.L.C.,* 2005 UT 91, ¶ 31, 127 P.3d 697 ("A regulatory taking transpires when some significant restriction is placed upon an owner's use of his property for which 'justice and fairness' require that compensation be given."); 4 Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning* (2005) § 74.18, at 74–54 (explaining that the goal of amortization is to eliminate non-conforming uses without compensation).

## B. Arbitrary, Capricious, or Illegal Action

■ ¶ 27 We turn next to whether the Board's decision to uphold the City's amortization provision was arbitrary, capricious, or illegal. *See Carrier v. Salt Lake County,* 2004 UT 98, ¶ 17, 104 P.3d 1208 (explaining that when an appellate court reviews a trial court's determination as to an administrative agency's decision, "we act as if we were reviewing the . . . agency decision directly" (quotations and citation omitted)). The Municipal Land Use, Development, and Management Act (MLUDMA) governs appeals from city land use decisions. *See* Utah Code

---

**3.** Utah courts, however, recognize that a failure to properly caption a motion is not, in most cases, fatal. *See Yeargin, Inc. v. Auditing Div. of the Utah State Tax Comm'n,* 2001 UT 11, ¶ 24, 20 P.3d 287.

**4.** Cox's counsel submitted an affidavit in support of such statements, but this court struck the affidavit because it was not included in the record below.

Ann. §§ 10–9a–101 to –103 (Supp.2007).[5] Under MLUDMA, a reviewing court must presume that City land use decisions, ordinances, or regulations are valid and may "determine only whether or not the decision, ordinance, or regulation is arbitrary, capricious, or illegal." *Id.* § 10–9a–801(3).[6]

¶ 28 Cox claims that the Board illegally interpreted the Ordinance when it concluded that "average monthly net rental income" under the Ordinance's amortization formula assumed fair market value. Cox argues that this interpretation violates the plain language of the Ordinance and results in the City using inconsistent figures to calculate the Property's "net income" and its "average monthly net rental income." In response, the City argues that the Board's interpretation is legal because the Ordinance does not contemplate the infinite amortization period, and effective perpetual nonconforming use, that would result from using below fair market values.

¶ 29 We "review a local agency's interpretation of ordinances for correctness, but also afford some level of non-binding deference to the interpretation advanced by the local agency." *Carrier,* 2004 UT 98 at ¶ 28, 104 P.3d 1208. And we note that "in close cases [the agency's] interpretation may be a determinative factor in choosing a particular interpretation over another." *Id.* at ¶ 39.

¶ 30 "In interpreting the meaning of a[n] ... ordinance, we begin first by looking to the plain language of the ordinance." *Id.* at ¶ 30. "If the plain language of the ordinance is ambiguous, we may resort to other modes of construction." *Id.* at ¶ 31. If we need to rely on other modes of construction, "we must keep in mind that 'when interpreting a[n ordinance], it is axiomatic that this court's primary goal is to give effect to the [city's] intent in light of the purpose that the [ordinance] was meant to achieve.'" *Id.* (first and third alterations in original) (quoting *Biddle v. Washington Terrace City,* 1999 UT 110, ¶ 14, 993 P.2d 875).

¶ 31 Importantly, as with statutes, ordinance "terms should be interpreted and applied according to their commonly accepted meaning unless the ordinary meaning of the term results in an application that is either 'unreasonably confused, inoperable, or in blatant contradiction of the express purpose of the [ordinance].'" *State v. Souza,* 846 P.2d 1313, 1317 (Utah Ct.App.1993) (citation omitted). "[I]f there is doubt or uncertainty as to the meaning or application of the provisions of an [ordinance], it is appropriate to analyze the [ordinance] in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose." *Id.*

¶ 32 Keeping in mind these standard rules of statutory construction, we conclude that the Board's interpretation of the Ordinance was legal. We agree with the City that Cox's interpretation would render a result that would contravene the purpose of the Ordinance. That is, it is clear the Ordinance does not intend there to be infinite amortization periods. The text of the Ordinance specifically states that anyone affected by the Ordinance, meeting certain conditions, shall be granted *"an extension of the time required to conform* with [the Ordinance]"; *"[t]he time period* during which an owner may recover the amount of his investment ... shall be determined by [the amortization formula]"; "[t]he resulting figure [from the amortization formula] is *the number of*

5. In 2005, the Utah Legislature renumbered MLUDMA. Prior to its renumbering, MLUDMA was codified at Utah Code sections 10–9–101 to 10–9–103. *See* Utah Code Ann. § 10–9–101 (2003). It is now found at Utah Code Ann. § 10–9a–101 to –803 (Supp.2007).

6. Prior to its amendment in 2005, MLUDMA only stated that "[t]he courts shall: (a) presume that land use decisions and regulations are valid; (b) determine only whether or not the decision is arbitrary, capricious, or illegal." Utah Code Ann. § 10–9–1001(3)(a)–(b) (2003). We note that the legislature's 2005 amendment to specifically include "ordinance" does not impact our review here. First, as previously noted, we review the Board's decision anew, and thus the current 2007 MLUDMA provisions govern our review. Second, because "ordinance" is a term commonly defined as "a municipal regulation," *Black's Law Dictionary* 505 (2d pocket ed.2001), we do not deem the legislature's 2005 inclusion of "ordinance" as substantively altering courts' prior jurisdiction.

*months* which the owner shall have to recover his investment in the property"; and *"[t]he time period* determined [by the amortization formula] shall apply to the property for which the owner made an application for extension and to the owner's successors ... *until such time period has run."* Provo, Utah, Code §§ 14.30.090(1)(2)(a), (c) (emphasis added).

¶ 33 Furthermore, as the City asserts in its brief, it would seem that "an infinite amortization period is not an amortization at all, but rather a permanent exemption from the owner occupancy requirements of the [O]rdinance as a nonconforming use." Commentators also suggest that an infinite amortization period is inconsistent with the meaning of amortization. *See, e.g.,* 1 Kenneth H. Young, *Anderson's American Law of Zoning* § 6.71, at 697 (4th ed. 1996) ("An amortization ordinance is one which allows a specified use a *period* of permitted nonconformity but requires that it be *terminated* at the end of such period." (emphasis added)); 4 Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning* § 74.18, at 74–54 (2005) ("Amortization secures *the eventual but certain* termination of nonconforming uses and structures by a provision in a zoning ordinance which requires that, after the lapse of a *specified time,* all or specific nonconforming uses *must* be discontinued." (emphasis added)).

¶ 34 Finally, the Ordinance's enabling statute, Utah Code section 10–9a–511, intimates that any established amortization period be definite. *See* Utah Code Ann. § 10–9a–511(2)(b). This section states that "[t]he legislative body may provide for ... the termination of all nonconforming uses ... by providing a formula establishing *a reasonable time period* during which the owner can recover or amortize the amount of his investment in the nonconforming use." *Id.* (emphasis added).

¶ 35 Thus, we conclude that the Board legally interpreted the Ordinance's "average monthly net income" provision as assuming fair market value. Such an interpretation is consistent with both the language of the Ordinance and the Ordinance's enabling statute, it is congruous with the meaning and purpose of an amortization period, and it "harmonize[s the Ordinance's] provisions in accordance with its intent and purpose," *Souza,* 846 P.2d at 1317.

¶ 36 Cox also argues that the Board's adoption of the City's calculated amortization period—22.11 years—was arbitrary and capricious. "We will consider the Board's decision arbitrary or capricious only if it is not supported by substantial evidence in the record." *Save Our Canyons v. Bd. of Adjustment,* 2005 UT App 285, ¶ 12, 116 P.3d 978 (quotations and citation omitted). "In determining whether substantial evidence supports the Board's decision we will consider all the evidence in the record, both favorable and contrary[,] and determine whether a reasonable mind could reach the same conclusion as the Board." *Id.* (citation and internal quotation marks omitted).

¶ 37 Cox's stated reason for the amortization calculation being unreasonable is the City's assumption of fair market rental value in computing "average monthly net income." As explained above, we approve of this assumption. Cox does not argue, and the record does not reveal, that the 22.11–year amortization determination is otherwise unreasonable. Further, we agree with the City that it is Cox's choice to hinder its investment recovery by charging little or no rent to its tenants, and this choice does not render the calculated investment recovery period itself unreasonable.

¶ 38 In sum, we affirm the trial court's determination that the Board did not act illegally, arbitrarily, or capriciously in upholding the City's calculated amortization period.[7]

## CONCLUSION

¶ 39 We affirm the trial court's summary judgment order because we conclude that the Board's decision to uphold the City's amortization determination was not arbitrary, capricious, or illegal and that the trial court properly determined that its summary judgment order disposed of all claims.

¶ 40 WE CONCUR: CAROLYN B. McHUGH and GREGORY K. ORME, Judges.