2004 UT 75

Brent FOUTZ, Aleta Taylor, Drew Chamberlain, Michael Ann Rippen, Jordan River Nature Center, Inc., and Friends of Midas Creek, Inc., Plaintiffs and Appellants,

v.

CITY OF SOUTH JORDAN, a body politic, and City of South Jordan Community Development Department, Defendants and Appellees.

No. 20020642.

Supreme Court of Utah.

Aug. 27, 2004.

Jeffrey W. Appel, Jennifer L. Crane, Kristine M. Larsen, Salt Lake City, for plaintiffs.

Jody K. Burnett, Robert C. Keller, Salt Lake City, and W. Paul Thompson, Melanie M. Serassio, South Jordan, for defendants.

PARRISH, Justice:

¶ 1 Plaintiffs Brent Foutz, Aleta Taylor, Drew Chamberlain, Michael Ann Rippen, Jordan River Nature Center, Inc., and Friends of Midas Creek, Inc., appeal the district court's dismissal of their action against the City of South Jordan and the South Jordan Community Development Department. Plaintiffs filed an enforcement action under section 10–9–1002 of the Utah Code, alleging that the South Jordan City Council approved construction of a parking lot near the Jordan River in violation of city ordinance. The district court dismissed plaintiffs' action, holding that it was, in reality, a challenge to the city's land use decision and was therefore barred because plaintiffs failed to file it within the 30–day limitations period specified by section 10–9–1001 of the Utah Code. We affirm.

## BACKGROUND

¶ 2 The South Jordan City Council approved the Riverpark Site Plan on February 14, 2001. The Site Plan, proposed by Anderson Development Company, contemplated construction of an office building and parking lot near the Jordan River. The Site Plan initially was reviewed by the city planning staff and transferred to the South Jordan Planning Commission with a positive recommendation. The Planning Commission held a public hearing on the plan and thereafter transferred it to the City Council with a recommendation that it be approved. Following public notice and an additional public hearing, the City Council unanimously approved the plan.

¶ 3 Construction of the office building and adjacent parking structure called for by the Site Plan commenced in the summer of 2001. In July 2001, plaintiffs contacted South Jordan and complained that the construction project violated a city ordinance aimed at preserving natural areas surrounding the Jordan River. Plaintiffs asked South Jordan to issue a written stop order pursuant to the "Zoning Enforcement" section of the South Jordan City code. When South Jordan refused to do so, plaintiffs sought review by the South Jordan Board of Adjustment. According to plaintiffs' complaint, the Board of Adjustment declined to review the request on jurisdictional grounds.

¶ 4 Plaintiffs filed suit in the district court on October 4, 2001, seeking declaratory and injunctive relief pursuant to Utah Code section 10–9–1002. That section, which is part of the Municipal Land Use Development and Management Act (MLUDMA), Utah Code Ann. §§ 10–9–101 to –1003 (2001), provides, in pertinent part, as follows:

**Enforcement.**

(1)(a) A municipality or any owner of real estate within the municipality in which violations of this chapter or ordinances enacted under the authority of this chapter occur or are about to occur may, in addition to other remedies provided by law, institute:

(i) injunctions, mandamus, abatement, or any other appropriate actions; or

(ii) proceedings to prevent, enjoin, abate, or remove the unlawful building, use, or act.

Utah Code Ann. § 10–9–1002(1)(a) (2001). We will refer to this section as the "Enforcement" section.

¶ 5 Plaintiffs' suit alleged that the city had violated South Jordan City ordinance 97–7. Ordinance 97–7, passed in April 1997, amended the "South Jordan City Zoning Map and Zoning Ordinance" by changing property near the Jordan River from an agricultural zone to an office service zone. The ordinance specifically excepted property "located within the 100–year flood plain and meander corridor along the Jordan River . . . which shall continue to be designated on the Future Land Use Plan Map as recreation/open space or preservation areas." South Jordan, Utah, Ordinance 97–7 (Apr. 28, 1997). According to plaintiffs, the parking structure contemplated by the Riverpark Site Plan violated ordinance 97–7 because it was to be located in the excepted flood plain and corridor area.

Plaintiffs also alleged in their complaint that the Site Plan violated a master development agreement that South Jordan had entered into with Anderson Development Company in April 1998.[1]

¶ 6 South Jordan responded to plaintiffs' complaint on the merits, alleging that the Site Plan violated neither city ordinance nor the master plan agreement. In addition, South Jordan moved to dismiss the action on the basis that plaintiffs had failed to initiate it within 30 days of the city's approval of the Site Plan. South Jordan argued that approval of the Site Plan constituted a land use decision that had to be challenged, if at all, within the time specified by section 10–9–1001 of the Utah Code. That section, also part of the MLUDMA, provides, in relevant part, as follows:

**Appeals.**

(1) No person may challenge in district court a municipality's land use decisions made under this chapter or under the regulation made under authority of this chapter until that person has exhausted his administrative remedies.

(2)(a) Any person adversely affected by any decision made in the exercise of the provisions of this chapter may file a petition for review of the decision with the district court within 30 days after the local decision is rendered.

Utah Code Ann. § 10–9–1001(1), (2)(a) (2001).[2] We will refer to this section as the "Appeals" section.

¶ 7 The district court granted South Jordan's motion to dismiss. It stated:

[The Appeals section] requires individuals challenging a municipality's land use decision to file a petition for review with the district court within thirty (30) days after the local decision is rendered. In

this case, the South Jordan City Council approved the Riverpark Site Plan for development on February 14, 2001. Plaintiffs, however, failed to file a complaint with this Court until October 4, 2001—well outside the statutory thirty (30) day review period.

The district court also rejected plaintiffs' argument that construction of the parking structure constituted a continuing violation that tolled the 30–day limit. Plaintiffs timely appealed the district court's ruling. This court has jurisdiction pursuant to section 78–2–2(3)(j) of the Utah Code. Utah Code Ann. § 78–2–2(3)(j) (2002).

## ANALYSIS

■ ¶ 8 Review of a grant of a motion to dismiss presents questions of law that we review for correctness, giving no deference to the decision of the district court. *State v. Hamilton,* 2003 UT 22, ¶ 17, 70 P.3d 111. In this case, we review for correctness the district court's interpretation and application of sections 10–9–1001 and 10–9–1002 of the Utah Code. *See State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County,* 2002 UT 8, ¶ 8, 44 P.3d 680 ("[A] district court's interpretation of a statutory provision is a question of law that we review for correctness.").

¶ 9 On appeal, plaintiffs argue that the district court erred in granting South Jordan's motion to dismiss because the Enforcement section, section 10–9–1002, provides them with an avenue of relief separate and apart from that available under the Appeals section, section 10–9–1001. Plaintiffs assert that the 30–day limitations period contained in the Appeals section cannot be applied to actions brought under the Enforcement section.

**1.** In addition, plaintiffs alleged that South Jordan's approval of the Site Plan violated city resolution 97–9. Resolution 97–9, passed in January 1997, amended the "Future Land Use Map of the Land Use Element of the General Plan of the City of South Jordan" to provide for the possible development of office buildings near the Jordan River in an area previously reserved for "recreation/open space and preservation uses." Similar to the ordinance, the resolution provided that land "within the 100–year flood plain and mean-

der corridor along the Jordan River … shall continue to be designated on the Future Land Use Plan Map as recreation/open space or preservation areas." South Jordan, Utah, Resolution 97–9 (Jan. 28, 1997).

**2.** Paragraph (2)(a) of section 10–9–1001 was amended in 2003. Utah Code Ann. § 10–9–1001 (2003). We recite the section as it appeared prior to amendment.

¶ 10 In contrast, South Jordan contends that plaintiffs actually are challenging a "land use decision" governed by the Appeals section. South Jordan maintains that the time limits imposed by the Appeals section apply to all challenges to municipal land use decisions. It urges that plaintiffs not be allowed to circumvent the requirements of that section by characterizing their claim as an "enforcement action" brought pursuant to section 10–9–1002.

¶ 11 This case requires that we reconcile the Appeals section, section 10–9–1001, with the Enforcement section, section 10–9–1002. "[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve." *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795; *see also Bd. of Educ. of Jordan Sch. Dist. v. Sandy City Corp.*, 2004 UT 37, ¶ 8, 94 P.3d 234. "We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592 (quotation and citation omitted). We strive to construe statutes in a manner that renders "all parts thereof relevant and meaningful." *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290, 1292 (Utah 1996). We analyze the provisions of the Appeals and Enforcement sections with these principles in mind.

¶ 12 The Appeals section requires that parties seeking to challenge municipal land use decisions exhaust their administrative remedies and file a petition for review within 30 days of the decision at issue. In contrast, the Enforcement section authorizes parties to initiate actions to enforce municipal land use ordinances without reference to any exhaustion requirement or limitations period. Plaintiffs' challenge to the construction of the parking structure arguably straddles both sections. Although plaintiffs contend that the existence of the parking structure constitutes a continuing violation of city ordinance giving rise to an enforcement action, they concede that the city's approval of the Site Plan, which authorized construction of the parking structure, constitutes a land use decision.

¶ 13 Considered in isolation, the provisions of the Enforcement section could be construed to provide plaintiffs an avenue for redress from South Jordan's land use decision—an avenue in which plaintiffs would have to neither exhaust administrative remedies nor comply with a deadline. We are not, however, free to construe the sections at issue in isolation or to adopt an interpretation that would render one of them meaningless. Rather, we read them in conjunction one with another, attempting to give effect to and harmonize their collective provisions. *Jerz v. Salt Lake County*, 822 P.2d 770, 773 (Utah 1991).

¶ 14 Because virtually every challenge to a land use decision could be alternatively characterized as an "enforcement" action, allowing a challenge to a municipality's land use decision under the Enforcement section would nullify the very existence of the exhaustion and timing requirements specified in the Appeals section. We therefore hold that plaintiffs, as parties seeking redress from a municipal land use decision, were obligated to comply with the requirements of the Appeals section.

¶ 15 This construction is consistent with the apparent purpose of the statutory scheme.[3] The Appeals section specifically addresses the appeal of municipal land use decisions made pursuant to the MLUDMA. By requiring the exhaustion of administrative remedies and the filing of a petition for review within 30 days, the provisions of the Appeals section evince a legislative intent to encourage the quick resolution of disputes over land use decisions and to recognize the

---

3. "Where the language of a statute is ambiguous, we may look to the statutory scheme to divine legislative intent." *Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 21, 63 P.3d 705 (citing *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795). Because the Enforcement and Appeals sections overlap, imposing inconsistent requirements on the same case, the statutes taken together are ambiguous. *Cf. United States Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993) ("An ambiguity in a contract [results when] two or more contract provisions, when read together, give rise to different or inconsistent meanings, even though each provision is clear when read alone.").

authority granted to municipal decision-making bodies.

¶ 16 The apparent statutory purpose of the Appeals section of the MLUDMA is identical to the purpose of the parallel provision of the County Land Use Development and Management Act (CLUDMA), which governs land use decisions by counties, rather than municipalities. In *Lund v. Cottonwood Meadows Co.*, we found:

> The 90–day limitation [period] [4] is designed to assure speedy appeal to the proper tribunal any grievance that a party may have who is adversed [sic] by a decision of an administrative agency. The evident purpose of the statute is to assure the expeditious and orderly development of a community. . . .

15 Utah 2d 305, 392 P.2d 40, 42 (1964).

¶ 17 Consistent with these principles, the Enforcement section is available to parties seeking redress from an alleged ordinance violation in circumstances where the alleged violation is not authorized by or embodied in a municipal land use decision. When the alleged violation arises directly from a municipal land use decision, the parties must comply with the requirements of the statutory provision that specifically addresses appeals from land use decisions, section 10–9–1001. The court reviewing the appeal may then determine whether the land use decision was "arbitrary, capricious," or, as in the case of violated ordinances, "illegal." Utah Code Ann. § 10–9–1001(3) (2001).

¶ 18 In reaching the interpretation we enunciate today, we are cognizant of the fact that the statutory provisions are not entirely clear and that the position urged by plaintiffs is not without some appeal.[5] We take comfort, however, from the fact that our interpretation is consistent with the apparent statutory purpose and that the legislature is, of course, free to amend the statutes to eliminate their ambiguity.

¶ 19 We take further comfort from the fact that our interpretation is consistent with our interpretation of a predecessor parallel statute that this court considered some four decades ago. In *Lund*, we interpreted sections 17–27–1001 and 17–27–1002 of the Utah Code, the predecessor sections to the current CLUDMA, Utah Code Ann. §§ 17–27–101 to –1003 (2001). 392 P.2d at 42. As previously noted, the provisions of the CLUDMA parallel the provisions of sections 10–9–1001 and 10–9–1002 of the MLUDMA that are at issue here.

¶ 20 In *Lund*, the plaintiff sought to prevent the development of a mobile home park after the Salt Lake County planning commission had approved the plan for the park. *Id.* at 41. The plaintiff argued that he was not required to exhaust administrative remedies as required by section 17–27–16 (the predecessor to section 17–27–1001) because the builders of the mobile home park were in actual violation of a zoning ordinance, and therefore section 17–27–23 (the predecessor to section 17–27–1002) provided him with an alternative avenue of relief. *Id.* at 42.[6] While recognizing that section 17–27–23 provided a general means of redress for the violation of ordinances, *Lund* held that the plaintiff was nevertheless required to fulfill the requirements of section 17–27–16 because he was challenging an administrative decision:

> Sec[tion] 17–27–23 gives land owners a separate cause of action in the courts when a violation of a zoning resolution is charged. But where, as in this case, the alleged violation of the ordinance arose

---

4. In *Lund*, the court analyzed section 17–27–16 of the 1953 Utah Code. 392 P.2d at 42. That section was the predecessor to section 17–27–1001 of the current CLUDMA. *See Bennion v. Sundance Dev. Corp.*, 897 P.2d 1232, 1237 (Utah Ct.App.1995); Utah Code Ann. § 17–27–16 (1953); Utah Code Ann. § 17–27–1001 (2001); *see also* ¶¶ 19–20, *infra*.

5. Plaintiffs' position is supported by the presence in the Enforcement section of language providing that the remedies there are "in addition to other remedies provided by law." Utah Code Ann. § 10–9–1002(1)(a) (2001).

6. The operative language of the provision at issue in *Lund*, Utah Code Ann. §§ 17–27–16, 17–27–23 (1964), is substantially equivalent to that at issue here. *See Bennion*, 897 P.2d at 1235–37 (discussing *Lund* and setting forth the language of sections 17–27–16 and 17–27–23). Indeed, section 17–27–23 of the Utah Code that was at issue in *Lund* and the Enforcement section at issue in this case both contain identical language providing that the remedies they contemplate are "in addition to other remedies provided by law."

from the administration of a zoning ordinance by an administrative officer or agency, as provided in Sec[tion] 17–27–16, appeal from that administrative ruling should have been taken to the proper administrative tribunal, or a suit should have been commenced in the courts within the statutory period. . . .

*Id.*

¶ 21 The court of appeals reached the same conclusion in *Bennion v. Sundance Development Corp.*, 897 P.2d 1232 (Utah Ct.App. 1995). In *Bennion*, the plaintiff challenged the county commission's approval of a recreational resort plan, arguing that the commission's approval violated zoning ordinances and Utah law. *Id.* at 1233–34. The plaintiff contended that although he had not exhausted administrative remedies under section 17–27–1001, section 17–27–1002 provided a separate avenue of relief because the developer was in actual violation of a zoning ordinance. *Id.* at 1237. The court of appeals upheld the dismissal of the plaintiff's action, holding that because the plaintiff's complaint was directed against the commission's decision, the plaintiff was required to appeal that decision as directed in section 17–27–1001. *Id.* at 1237–38.

¶ 22 As in *Lund* and *Bennion,* the plaintiffs in this case allege that the project contemplated by the municipal land use decision violated city ordinance. As in *Lund* and *Bennion,* however, the project would never have been constructed and plaintiffs' claims never would have arisen but for the initial land use decision. Therefore, consistent with *Lund* and *Bennion,* plaintiffs were obligated to bring their action under the Appeals section, section 10–9–1001, and to comply with the 30–day time limitation contained therein.

¶ 23 In urging us to adopt a construction that allows them to proceed under the Enforcement section, plaintiffs rely on *Culbertson v. Board of County Commissioners*, 2001 UT 108, 44 P.3d 642. *Culbertson,* however, is readily distinguishable from the situation presented here. The plaintiffs in *Culbertson* brought suit against the county commission and developers, arguing that the developers' building violated the terms of a conditional use permit granted by the county and various zoning ordinances. *Id.* at ¶¶ 1–10. The county argued that the plaintiffs had failed to

exhaust administrative remedies as required under the Appeals section, section 17–27–1001. *Id.* at ¶ 29. This court held that section 17–27–1001 did not apply because the plaintiffs were not challenging any decisions made under the CLUDMA, but instead were seeking to enforce decisions made pursuant to it, i.e., conditions specified in the zoning ordinance and conditional use permit. *Id.* at ¶¶ 29–30. Unlike the plaintiffs in *Culbertson,* the plaintiffs in this case are not seeking to enforce the terms of a land use decision. Rather, they are seeking to challenge activities expressly authorized and contemplated by it.

¶ 24 Having concluded that plaintiffs were required to satisfy the 30–day deadline specified in the Appeals section, we address plaintiffs' alternative argument that their action was timely because the city's failure to stop construction of the parking structure constitutes a continuing violation of city ordinance. Specifically, plaintiffs argue that the 30–day limitations period was extended as a result of this continuing violation. In so arguing, plaintiffs rely on a provision of the South Jordan City code, which states that "[a] violation [of the city's zoning title] shall be deemed a separate offense for each day the violation exists." South Jordan, Utah, City Code § 12.04.090 (1998).

¶ 25 We find plaintiffs' argument unpersuasive. The South Jordan City Council met, discussed, and voted on the Riverpark Site Plan on February 14, 2001. February 14 is therefore the date on which the land use decision was rendered. The limitations provision of the Appeals section runs from the time the municipality "renders" a land use "decision," not from the time of an alleged violation. Plaintiffs' creative attempt to characterize the city's refusal to reverse its original land use decision as a series of subsequent decisions cannot operate to artificially lengthen the statutorily mandated time for challenging the land use decision. Having rejected plaintiffs' claim that their action was timely filed, we hold that the district court correctly dismissed plaintiffs' action against South Jordan.

## CONCLUSION

¶ 26 We harmonize sections 10–9–1001 and 10–9–1002 of the Utah Code by holding that

a party seeking to challenge a municipality's land use decision under the Municipal Land Use Development and Management Act must comply with the requirements of section 10–9–1001. A party may not avoid those requirements by characterizing its challenge to the land use decision as an enforcement action under section 10–9–1002. The legislature has specifically addressed appeals from land use decisions in section 10–9–1001, requiring the exhaustion of administrative remedies and imposing a 30–day deadline for challenging such decisions. Allowing a party to challenge a municipality's land use decision under section 10–9–1002 would eviscerate the requirements and evident purpose of section 10–9–1001. Because plaintiffs' challenge to South Jordan's land use decision was not timely, we affirm the ruling of the district court.

¶ 27 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.