2014 UT App 155

**Troy GREEN and Victoria Green, Plaintiffs and Appellees,**

v.

**Christine BROWN, Defendant, Third-party Plaintiff, and Appellant,**

v.

**Weber County and Weber County Board of Adjustment, Third-party Defendants and Appellees.**

**No. 20130247–CA.**

Court of Appeals of Utah.

July 3, 2014.

---

Bruce R. Baird, Sandy, for Appellant.

Christopher F. Allred, for Appellees Weber County and Weber County Board of Adjustment.

Zane S. Froerer, Ogden, for Appellees Troy Green and Victoria Green.

Judge JOHN A. PEARCE authored this Opinion, in which Judges GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

PEARCE, Judge:

¶1 Weber County zoning ordinances require a party aggrieved by a land use decision to file an appeal with the Board of Adjustment within fifteen days. Christine Brown challenges the Board's application of that time bar to her appeal. The district court concluded that the Board had correctly determined that Brown's appeal was untimely. We affirm.

## BACKGROUND

¶2 In 1974, the Middle Fork Ranches Subdivision Plat was recorded. The plat depicts nineteen lots, an east-west road, and two cul-de-sacs. The road forms the southern border of Lots 7 and 8. Lot 7 lies between Lot 8 and one of the cul-de-sacs. The plat shows a right-of-way connecting Lot 8 to the cul-de-sac across the northern edge of Lot 7, with the notation "15′ R.O.W. for Lot 8." For convenience, we refer to the right-of-way as the ROW.

¶ 3 Brown purchased Lot 7 in 1975. The Greens purchased Lot 8 on March 4, 2010. On March 11, 2010, the Greens obtained a building permit, titled "Land Use Permit," for the construction of a house on Lot 8. The Weber County city planner who issued the permit noted on it that "[a]ccess for this lot 8 is through a ROW on lot 7." The Greens designed their house to incorporate driveway access across Lot 7 and began building the house no later than July 2010. Brown and the Greens engaged in negotiations over the exact placement of utility lines near or within the ROW during July, August, and September of 2010. On August 2, 2010, Brown received an email from the Greens, stating that they intended to use the full width of the ROW as a driveway.

¶ 4 On September 24, 2010, Brown requested and received a copy of the permit. On October 7, 2010, Brown sent a letter to the Weber County Planning Director asking him to "investigate regarding the permit and review process for the land use permit that was issued to Troy and Victoria Green." Brown's letter ended with several questions for the Planning Director: "How did this permit get issued? Will it be revoked? If not, why?"

¶ 5 The Planning Director replied on October 27, 2010, explaining that the permit had been issued appropriately. He noted that the planning division had relied on the plat, "which was approved and recorded in 1974." He further noted that no appeal from the issuance of the permit had been filed. On November 9, 2010, Brown filed an appeal with the Weber County Board of Adjustment.

¶ 6 The Board denied Brown's appeal. It determined that the building permit was the land use decision that had started the clock ticking on Brown's time to appeal. It also determined that the Planning Director's reply letter did not constitute a separate appealable land use decision. The Board concluded that Brown's appeal, which she filed forty-five days after she received a copy of the building permit, was untimely. The Board thus did not reach the merits of Brown's appeal.

¶ 7 Brown then filed a cross-complaint in existing Green–Brown litigation in the district court, naming the Board as a third-party defendant. She argued that her appeal to the Board had been timely and that she was entitled to judicial review of the Board's refusal to hear her appeal. The parties eventually brought cross motions on the issue. After a hearing, the district court found that the permit was the relevant land use decision; that Brown had received actual notice of the permit no later than September 24, 2010; that the Planning Director's reply letter was not a separate land use decision; and that Brown's appeal to the Board was untimely. The district court dismissed Brown's cross-complaint with prejudice and certified the dismissal as a final judgment under rule 54(b) of the Utah Rules of Civil Procedure. Brown appeals that dismissal.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Brown challenges the district court's dismissal of her cross-complaint seeking review of the Board's determination that her appeal was untimely. "When a district court reviews an order of a local land use authority and we exercise appellate review of the district court's judgment, we act as if we were reviewing the land use authority's decision directly, and we afford no deference to the district court's decision." *Fox v. Park City,* 2008 UT 85, ¶ 11, 200 P.3d 182. "[O]ur review is limited to whether a land use authority's decision is arbitrary, capricious, or illegal." *Id.* (citation and internal quotation marks omitted).

¶ 9 Brown first contends that the permit was invalid because it was issued by a city planner, rather than the Board itself. She argues that because no valid permit was ever issued, the time limit for filing an appeal never began to run and the Board thus erred in determining that the time limit barred her appeal. A challenge to the validity of a land use permit disputes the legality of the land use authority's procedure in issuing that permit. We therefore apply a correctness standard of review, but " 'also afford some level of non-binding deference to the interpretation advanced by' the land use authority."

*See id.* (quoting *Carrier v. Salt Lake County,* 2004 UT 98, ¶ 28, 104 P.3d 1208).

¶ 10 Brown also contends that the Board erred in determining that the Planning Director's reply letter was not an appealable land use decision. Insofar as this is an assertion that the Board's determination was arbitrary or capricious, we apply a substantial evidence standard. *Id.* To the extent that Brown asserts that the Board's determination was contrary to the law, we review that determination for correctness. *Id.*

## ANALYSIS

¶ 11 The County Land Use, Development, and Management Act (CLUDMA) sets forth minimum standards for county land use ordinances. *See* Utah Code Ann. § 17–27a–102 (LexisNexis 2009). CLUDMA requires that each county's ordinances provide for a quasi-judicial appeal authority. *Id.* § 17–27a–701. It also requires each county to provide at least ten days to appeal a written land use decision. *Id.* § 17–27a–704. Weber County's ordinances comply with these requirements by allowing fifteen days to file an appeal with the Weber County Board of Adjustment. Weber County, Utah, Zoning Ordinances § 29–3 (2007). These brief limitation periods are designed to promote "the expeditious and orderly development of a community" by ensuring that disputes are quickly resolved. *See Foutz v. City of South Jordan,* 2004 UT 75, ¶ 16, 100 P.3d 1171 (citation and internal quotation marks omitted). However, to help ensure that the right to appeal is meaningful, our supreme court has adopted a general rule that "the appeal period begins when an affected party receives actual or constructive notice that the building permit has been issued." *Fox,* 2008 UT 85, ¶ 30, 200 P.3d 182.

¶ 12 Here, the parties do not dispute the district court's finding that Brown had actual notice of the land use permit's issuance no later than September 24, 2010, when she received a copy of the permit from the county's planning division. Nor do they dispute that Brown's appeal was dated November 9, 2010. The burden rests on Brown to show that her appeal was not time-barred.

¶ 13 Brown raises two arguments. First, she argues that because the planner who issued the building permit lacked the authority to do so, the issuance of the permit could not have started the appeal period. Second, she argues that the Planning Director's October 27, 2010 reply letter constituted a separate land use decision and that her appeal was timely because it was brought within fifteen days of that letter.

## I. Validity of the Land Use Permit

¶ 14 Brown first contends that "[t]he time for appeal does not even begin to run until the appropriate land use authority has made a written determination adversely affecting the appellant" and that the appropriate land use authority did not decide the question concerning the Greens' use of the ROW. She cites a Weber County zoning ordinance, which provides that access to a lot in a subdivision "shall be across the front lot line abutting a public or private street approved by the county or as otherwise approved by the Board of Adjustment." Weber County Zoning Ordinances § 24–2A. She characterizes the notation on the permit that "[a]ccess for this lot 8 is through a ROW on lot 7" as a variance to that ordinance. She argues that only the Board, and not a planning department employee, could approve such a variance. On this basis, she asserts that the permit issued by the city planner was, "effectively, void ab initio as being, effectively, ultra vires." In short, in Brown's view, no valid land use permit was ever issued and thus the fifteen-day appeal window never began to run.

¶ 15 Even if we were to accept Brown's contention that the planner lacked the authority to issue the Greens a building permit that allowed them to use the ROW as a driveway, Brown cites no case or statute to support the proposition that the fifteen-day time limit for filing an appeal does not apply to a challenge to a land use decision premised on an alleged lack of authority to make that decision. Although it appears that there is no case directly on point, the Utah Supreme Court addressed a somewhat analogous contention in *Gillmor v. Summit County,* 2010 UT 69, 246 P.3d 102. In that case,

Summit County argued that its decision to deny Gillmor's plat application was not reviewable under CLUDMA because Gillmor's application did not comply with Summit County's plan or code. *Id.* ¶ 21. In essence, Summit County argued that review under CLUDMA could only be triggered by a valid application for a land use decision and that because Gillmor admitted she had never submitted a compliant application, she could not seek review of the county's denial. *Id.* The supreme court rejected Summit County's argument, reasoning that "the noncompliance of Gillmor's applications does not render the County's rejections 'nondecisions' and does not shield these rejections from judicial review." *Id.* The court further reasoned that "the noncompliance of Gillmor's applications relates solely to the question of whether the County's decisions were arbitrary, capricious or illegal—the exact question a district court will consider on review." *Id.*

¶ 16 Although *Gillmor* is not directly on point here, the Utah Supreme Court's logic is instructive. The planner's decision to issue a building permit allowing the ROW to be used as a driveway is not rendered a "nondecision" by Brown's argument that the planner lacked the authority to issue the permit. Put another way, Brown's belief that the planner lacked the proper authority to make that land use decision did not alter the reality that a land use decision had been issued and that the decision, properly issued or not, had adversely affected her property interests. *See* Utah Code Ann. § 17–27a–701(2) (Lexis-Nexis 2009) ("As a condition precedent to judicial review, each adversely affected person shall timely and specifically challenge a land use authority's decision, in accordance with local ordinance."). If Brown wanted relief from the adverse consequences of the building permit, she needed to challenge it in the time and manner required by the Weber County Zoning Ordinances. To paraphrase the *Gillmor* court, the question of whether the planning department possessed the authority to authorize use of the ROW through a building permit was the exact question the Board could have considered upon a timely appeal.

¶ 17 This result promotes the policies undergirding CLUDMA. The Utah Supreme Court has recognized that a permit holder "is entitled to know when the municipality's decision to issue a building permit will become final and no longer be subject to review or reversal." *Fox v. Park City*, 2008 UT 85, ¶ 32, 200 P.3d 182 (brackets, citation, and internal quotation marks omitted). "Knowing when the decision is final and no longer subject to review allows the permit holder to rely on the building permit and to feel secure in putting the land to the use granted him by the permit." *Id.* (citation and internal quotation marks omitted). The Utah Supreme Court has also noted that CLUDMA's limitation period is designed to "assure the expeditious and orderly development of a community." *Foutz v. City of South Jordan*, 2004 UT 75, ¶ 16, 100 P.3d 1171. Brown's interpretation would permit a challenge to the authority of a permit-issuing official to be brought at any time, potentially even years after the issuance of the offending permit. This reading of CLUDMA would substantially undermine, if not annihilate, one of the public policy goals that CLUDMA embodies: "to encourage the quick resolution of disputes over land use decisions. . . ." *Id.* ¶ 15.

¶ 18 For these reasons, we conclude that the Weber County Zoning Ordinance's fifteen-day filing window applies to all administrative appeals from land use decisions, regardless of whether they challenge the substance of the decision or the authority of the land use authority to make the decision. Because Brown's challenge to the validity of the permit was not raised within that time period, it is untimely.

## II. Separate Appealable Decision

¶ 19 Brown next contends that her appeal was timely because it was brought not from the issuance of the permit but rather from the Planning Director's October 27, 2010 letter. She characterizes that letter as "the first determination by [a] land use authority ... that § 24–2A would not be enforced." She maintains that it constituted an implicit refusal to enforce the ordinance and that such a refusal is an appealable land use decision. On this basis, Brown asserts that

she "timely appealed [the Planning Director's] interpretation and determination that the County would not enforce the Zoning Ordinance."

¶ 20 Brown wrote to the Planning Director on October 7, 2010, asking him to enforce certain Weber County zoning ordinances that Brown believed were "blatantly ignored" and would prevent the Greens from using the ROW as a driveway. Brown's letter concluded by asking the Planning Director, "How did this permit get issued? Will it be revoked? If not, why?" The Planning Director replied by letter on October 27, 2010, explaining that the planning division had determined that the ROW had existed since the recording of the 1974 plat and that the permit had been issued in reliance on that determination. Rather than explicitly responding to Brown's request to revoke the permit, the Planning Director instead noted only that Brown had failed to file an appeal.

¶ 21 Brown argued that the October 27 letter was a land use decision that she was entitled to appeal under CLUDMA. The Board determined that the reply letter was "simply an explanation of why the Planning Division felt the decision to issue the land use permit was not in error." The Board also determined that the alleged refusal to enforce an ordinance was not an appealable land use decision. Our review is limited to considering whether the Board's determination was arbitrary, capricious, or illegal. *Fox v. Park City*, 2008 UT 85, ¶ 11, 200 P.3d 182.

¶ 22 A land use authority's determination is arbitrary or capricious only if it is unsupported by substantial record evidence. *Id.* Here, Brown's letter asked the Planning Director to explain how the permit had been issued despite certain ordinances. He did so by informing her that the permit had been issued in reliance on the 1974 "approved and recorded subdivision plat [that] showed the right-of-way in question and was approved by the land-use-authority." The tone of the reply letter is explanatory, as befitting a response to Brown's inquiry, "How did this permit get issued?" Moreover, the letter does not purport to refuse to enforce the ordinances. The content of the two letters provides substantial evidence to support the Board's determination that the reply letter was "simply an explanation" of a previous decision and not a separate land use decision. The determination was therefore not arbitrary or capricious.

¶ 23 We next consider whether the Board's determination that the reply letter did not constitute a separate land use decision was contrary to the law. *See Fox*, 2008 UT 85, ¶ 11, 200 P.3d 182. Brown asserts that the Planning Director's letter contained an implicit refusal to enforce the ordinance and that the alleged refusal was an appealable land use decision. The Utah Supreme Court addressed a similar situation in *Foutz v. City of South Jordan*, 2004 UT 75, 100 P.3d 1171. The plaintiffs there argued that their action was timely, despite being brought more than six months after the expiration of a thirty-day limitations period, because the defendant's refusal to reverse its original land use decision was a continuing violation. *Id.* ¶¶ 2–4, 25. The court noted that the limitations period begins to run from the time that a decision is rendered and not from the time of an alleged violation. *Id.* ¶ 25. The court concluded that the plaintiffs' "creative attempt to characterize the city's refusal to reverse its original land use decision as a series of subsequent decisions cannot operate to artificially lengthen the statutorily mandated time for challenging the land use decision." *Id.* Indeed, the court reasoned that "[b]ecause virtually every challenge to a land use decision could be alternatively characterized as an 'enforcement' action, allowing a challenge to a municipality's land use decision under the Enforcement section would nullify the very existence of the exhaustion and timing requirements specified in the Appeals section." *Id.* ¶ 14.

¶ 24 Brown argues that *Foutz* is inapposite. She notes that the plaintiffs in that case were attempting to challenge a properly made land use decision after the appeal period had been properly triggered. She distinguishes her situation by asserting that the Greens' permit was invalidly issued and that accordingly "there never was ... a triggering decision by the land use authority." However, as explained in Part I, while Brown now claims that the land use authority lacked the power to make the "triggering decision,"

a triggering decision was made, and Brown needed to have appealed that decision in a timely fashion if she wished to challenge it.

¶ 25 Our case law dictates that an appeal period begins to run from the date that the aggrieved party has actual or constructive notice of a land use decision and is not tolled by a land use authority's continuing refusal to revoke that decision. *See Foutz,* 2004 UT 75, ¶ 25, 100 P.3d 1171 ("The limitations provision … runs from the time the municipality renders a land use decision, not from the time of an alleged violation." (internal quotation marks omitted)); *see also Fox,* 2008 UT 85, ¶ 30, 200 P.3d 182 (adopting "the rule that the appeal period begins when an affected party receives actual or constructive notice that the building permit has been issued"). Accordingly, the Board's determination that the Planning Director's reply letter was not a separately appealable land use decision is not contrary to the law. *See Fox,* 2008 UT 85, ¶ 11, 200 P.3d 182.[1]

### CONCLUSION

¶ 26 Brown's contention that the permit was invalid was not raised in a timely appeal. Substantial evidence supports the Board's determination that the Planning Director's reply letter was only an explanation of the procedure underlying the issuance of the land use permit. Furthermore, the Board's determination that the reply letter did not announce a new land use decision was not arbitrary, capricious, or illegal. For these reasons, we conclude that the district court did not err in dismissing Brown's cross-complaint.

¶ 27 Affirmed.

---

1. Brown also argues that the permit did not inform her that "the Greens would be allowed to utilize[ ] the ROW as a driveway despite" the ordinances. "[A] party must not only have notice that a building permit has been issued, but must also have knowledge of the facts that form the basis of the party's objection to the permit before the appeal period begins." *Fox v. Park City,* 2008 UT 85, ¶ 28, 200 P.3d 182. It is true that the permit does not mention the ordinances. But it explicitly stated, "Access for this lot 8 is through a ROW on lot 7." Moreover, when Brown received the permit, she knew the essential facts forming the basis of her objection. Specifically, she was aware that the Greens intended to use the ROW across her property to access their own property and that the Weber County planning division had approved that course of action. Indeed, she requested a copy of the permit only after engaging the Greens in protracted negotiations over the use of the ROW and after receiving an email from the Greens informing her that they would use the full width of the ROW as a driveway.