2022 UT App 140

## THE UTAH COURT OF APPEALS

TANNIN J. FUJA AND MEGAN FUJA,
Appellants,
*v.*
WOODLAND HILLS,
Appellee.

Opinion
No. 20210755-CA
Filed December 8, 2022

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 200401123

Richard H. Reeve, Attorney for Appellants

Robert C. Keller, Dani N. Cepernich, and Nathanael
J. Mitchell, Attorneys for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN
concurred.[1]

BENCH, Senior Judge:

¶1      Tannin and Megan Fuja appeal the district court's grant of
summary judgment in favor of the city of Woodland Hills (the
City). We agree with the district court and affirm.

## BACKGROUND

¶2      On July 5, 2019, the City issued a residential building
permit to John and Jennifer Adams, the owners of a lot adjacent
to the lot owned by the Fujas. On February 21, 2020, after

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

construction on the adjacent lot was well underway, counsel for the Fujas sent a letter to the Woodland Hills City Attorney (the city attorney), raising "extremely urgent" concerns that the house being constructed violated the maximum height requirement of the residential area. Through the letter, the Fujas "demand[ed] that the City take immediate enforcement action as required by the City Code."

¶3   One week later, counsel for the Fujas sent another letter to the city attorney, raising issues with the average slope on the adjacent lot. The letter argued that the original plans included two elevation errors that "do not appear to be accidental." Although the letter clarified, "The Fujas are not at this time claiming fraud against any certain individual or entity," it did argue, "If the City had done a competent review of the site plan and the . . . survey, [it] would have discovered these errors." The letter requested that the City "conduct a thorough review of the Construction Plans" and "act immediately to enforce its Code as written."

¶4   The Fujas' counsel sent another letter on March 12, 2020, which included a list of thirteen specific alleged code violations and, once again, urged the City to "enforce its City Code as written." Shortly thereafter, the city attorney specifically responded to this letter, providing the City building official's response to each alleged code violation listed. Counsel for the Fujas promptly responded, arguing that the building official's responses were "deficient," imploring the City to have an outside engineer review the alleged violations, and requesting a response to the height and slope violations alleged in the earlier February letters.

¶5   The Fujas submitted an appeal to the Woodland Hills Board of Adjustment (the Board) on March 31, 2020. They argued that "[t]he City's administration and interpretation of the Building Height Ordinance is in error" and requested that the ordinance "be enforced as written." The City responded, arguing, in part, that the appeal was untimely as it was initiated more than forty-five days after the Fujas became aware that a building

permit was issued and therefore had "constructive notice of any height issues" with the proposed construction.

¶6    In response to the timeliness argument, the Fujas responded, "The Fujas are not challenging the building permit that the City issued to the Adams[es] on July 5, 2019. The Fujas are appealing the decision and determination made by [the City] to not enforce the City's Zoning Ordinance . . . ." And they argued that such a lack of enforcement "did not become apparent until February 20, 2020," when construction began on the third story of the residence. At the hearing before the Board, counsel for the Fujas further clarified that the Fujas were not challenging the issuance of the building permit but were, instead, seeking "to appeal the decision and determination by [the City] . . . to not enforce the conditions of approval that [the City] had placed upon the Adams[es] when they were issued their building permit."

¶7    The Board issued its decision on July 14, 2020. The Board determined that the lack of enforcement of which the Fujas complained did not qualify as a "decision or determination" that would trigger a new appeal window and that the Fujas' appeal was therefore untimely, having been filed long after the building permit was originally issued.

¶8    On August 8, 2020, the Fujas filed a Petition for Review with the Fourth District Court. The petition stated that it was made "[p]ursuant to the requirements of" Utah Code section 10-9a-801. *See* Utah Code Ann. § 10-9a-801 (LexisNexis Supp. 2022) (setting forth requirements to appeal a "land use decision"). The petition argued that the Board had "erroneously identif[ied] the land use decision at issue as the issuance of a building permit on July 5, 2019," and had mistakenly "determine[d] that the decision to allow the developer to violate the building permit and deviate from the approved building plans in such a way as to violate the mandatory land use regulations . . . was not a land use decision." The petition therefore argued that "[t]he Board acted arbitrarily and capriciously in deciding that the [Fujas'] appeal was untimely by tying the appeal timeline to a decision that was

based upon the issuance of the original building permit which relied upon building plans not currently being followed by the builder of the Non-compliant Residence."

¶9     In response, the City filed a motion for summary judgment, arguing that the failure of enforcement claimed by the Fujas does not constitute a reviewable "land use decision" falling under the scope of Utah Code section 10-9a-801. The City further argued that the only "land use decision" in this case was the building permit issuance on July 5, 2019, and that if the Fujas were contesting that decision, their challenge would be barred because they did not timely "exhaust their administrative remedies."

¶10     The Fujas opposed the motion, arguing that their appeal before the Board had "encompass[ed] both the (1) issuance of the building permit by the City building official and (2) subsequent decisions by the City . . . to allow the Adamses to significantly depart from the approved plans." They further argued that the lack of enforcement did constitute a "land use decision," as well as that they could not have appealed to the Board earlier because the plans actually submitted "did comply with the two-story requirement regarding building height" and the departures from those plans were not known until later. Additionally, as part of their timeliness argument, the Fujas asserted that "key elevation data in the original building permit appears to have been concealed or not properly represented" and that the Adamses used information they "knew, or should have known, to be incorrect" to obtain the building permit.

¶11     After a hearing, the district court granted the City's motion to dismiss. The court concluded,

> Apart from the decision to grant the underlying permit, simple inaction is involved here. Such inaction cannot form the basis of a land use decision review because there is no decision to review at this time. Instead, . . . [the Fujas] complain of enforcement matters. If [the Fujas] wanted [the City]

to enforce its own ordinances, then [the Fujas] could have filed an enforcement action pursuant to Utah Code section 10-9a-802.

¶12 The Fujas now appeal.[2] They argue that the district court erred in its assessment of their appeal as one exclusively centered on enforcement and contend that their challenge was both to the initial building permit and to the City's subsequent "decision" to allow departures from the permit.

ISSUE AND STANDARD OF REVIEW

¶13 The Fujas contest the district court's grant of summary judgment in favor of the City. "It is well established that summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *M & S Cox Invs., LLC v. Provo City Corp.*, 2007 UT App 315, ¶ 19, 169 P.3d 789 (quotation simplified); *see also* Utah R. Civ. P. 56(a). "Accordingly, we review the [district] court's entry of summary judgment for correctness and view the facts and all reasonable inferences drawn therefrom in the light most favorable to . . . the nonmoving party." *M & S Cox Invs.*, 2007 UT App 315, ¶ 19 (quotation simplified).

ANALYSIS

¶14 Two provisions of the Municipal Land Use, Development, and Management Act are relevant in this case. The first is Utah Code section 10-9a-801 (the appeals section), which allows an "adversely affected" party to petition the district court for review of a municipality's "land use decision." *See* Utah Code Ann. § 10-9a-801(2)(a) (LexisNexis Supp. 2022). A "land use decision" is defined as "an administrative decision of a land use authority or

---

2. Although the Fujas were originally represented by counsel on appeal, their reply brief was filed pro se.

appeal authority regarding: (a) a land use permit; (b) a land use application; or (c) the enforcement of a land use regulation, land use permit, or development agreement." *See id.* § 10-9a-103(27) (Supp. 2019).[3] The second relevant provision, entitled "Enforcement," is Utah Code section 10-9a-802 (the enforcement section), which allows "an adversely affected" party to commence "proceedings to prevent, enjoin, abate, or remove [an] unlawful building, use, or act." *See id.* § 10-9a-802(1)(a) (Supp. 2022).

¶15    In addressing the applicability of these two sections, our supreme court has explained that "[w]hen the alleged violation arises directly from a municipal land use decision," the appeals section is applicable, whereas the enforcement section is applicable when "parties seek[] redress from an alleged ordinance violation in circumstances where the alleged violation is not authorized by or embodied in a municipal land use decision." *Foutz v. City of S. Jordan*, 2004 UT 75, ¶ 17, 100 P.3d 1171. We agree with the City that relevant guidance is given by the supreme court's decision in *Culbertson v. Board of County Commissioners*, 2001 UT 108, 44 P.3d 642, *overruled on other grounds by Madsen v. JPMorgan Chase Bank, NA*, 2012 UT 51, 296 P.3d 671 (per curiam). In *Culbertson*, the plaintiffs, after having unsuccessfully sought action from Salt Lake County,[4] brought suit to force the county to

---

3. This statute has recently been amended, and subpart (c) is no longer part of the definition of a "land use decision." *See* Utah Code Ann. § 10-9a-103(31) (LexisNexis Supp. 2022). Notably, subpart (c) was limited to *enforcement* and did not extend to inaction, i.e., a failure to enforce. *See id.* § 10-9a-103(27)(c) (Supp. 2019).

4. This county-related case was brought under the County Land Use, Development, and Management Act, as opposed to the Municipal Land Use, Development, and Management Act. But the two acts have parallel (and nearly identical) appeals and enforcement sections. *See Foutz v. City of S. Jordan*, 2004 UT 75, ¶ 19, 100 P.3d 1171. *Compare* Utah Code Ann. §§ 10-9a-801, -802 (LexisNexis 2022), *with id.* §§ 17-27a-801, -802.

enforce its ordinances and a conditional use permit. *Id.* ¶ 8. The court clarified that the appeals section was not applicable in such a situation but "applies only when a party desires to challenge a land use *decision*." *Id.* ¶ 30. Thus, where plaintiffs "do not *challenge* any decisions made under the Land Use Act, but instead seek *enforcement* of decisions made pursuant to it," the appeals section does not apply. *Id.* In other words, inaction on the part of the county was not considered a land use decision addressed by the appeals section.

¶16　Therefore, to the extent the Fujas argue that the inaction of the City qualifies as a "land use decision" and can be challenged through the appeals section, we disagree. The inaction of which they complain relates to the alleged noncompliance of the Adamses with the issued building permit. But such noncompliance "is not authorized by or embodied in" a decision made under the land use act, *see Foutz*, 2004 UT 75, ¶ 17, and consequently, the appeals section does not apply.

¶17　The Fujas additionally argue on appeal that their petition does not simply challenge the City's failure to act, but it also challenges the original issuance of the July 5, 2019 building permit, which is clearly a land use decision that may be appealed under the appeals section. But this argument is not well taken as it is a complete departure from the arguments raised by the Fujas prior to this appeal. Before the Board, the Fujas explicitly stated that they were not challenging the issuance of the permit but only the City's failure to enforce the conditions included within the permit. Likewise, when petitioning the district court, the Fujas specified that the alleged error committed by the Board was that it had "erroneously identif[ied] the land use decision at issue as the issuance of a building permit on July 5, 2019." Thus, the Fujas were clear that they were not raising issues with the original issuance of the building permit but instead were arguing that City officials erred by "(1) fail[ing] to require the builder of the Non-compliant Residence to comply with the approved building permit and approved building plans and (2) fail[ing] to require the deviations in construction to be submitted as amended plans

and undergo an approval process to ensure compliance with the Zoning Ordinances."

¶18 Indeed, the only references that the Fujas point to in support of their claim regarding a challenge to the original permit are citations to assertions they made in their written and oral arguments in response to the City's motion for summary judgment. They cite no other instance before either the Board or the district court where such an argument was advanced, nor do we see any such arguments in our review of the record. Where a claim is absent from the initial pleadings and appears for the first time in response to a summary judgment motion, we do not consider it. *See Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 31, 48 P.3d 895 ("A plaintiff cannot amend the complaint by raising novel claims or theories for recovery in a memorandum in opposition to a motion to dismiss or for summary judgment because such amendment fails to satisfy Utah's pleading requirements." (citations omitted)). Therefore, the Fujas did not actually challenge the issuance of the July 5, 2019 building permit before the district court.

¶19 Moreover, even if an objection to the original building permit was raised and argued below, that challenge would still fail as it would be untimely. The City has established that a land use decision in Woodland Hills has an appeal window of forty-five days. *See* Woodland Hills, Utah, Code of Ordinances 127.06(2) (2020). *See generally* Utah Code Ann. § 10-9a-704(1) (LexisNexis Supp. 2022) ("The municipality shall enact an ordinance establishing a reasonable time of not less than 10 days to appeal to an appeal authority a written decision issued by a land use authority."). "[T]he appeal period begins when the affected party receives actual or constructive notice that the permit has been issued." *Fox v. Park City*, 2008 UT 85, ¶ 26, 200 P.3d 182. And the Fujas had constructive notice of the permit in mid-2019 when they saw that construction had begun on the lot, *see id.* ¶ 27; however, their objections were not raised until 2020—long after the appeal window had closed.

¶20 In contesting the timeliness issue, the Fujas point us to language by our supreme court stating that "there may be exceptional circumstances that may allow an affected party to bring an appeal even after the appeal period has run." *Id.* ¶ 29. Such exceptional circumstances "may include fraud on the part of the permit applicant or bribery of municipal officials to secure the building permit." *Id.* This exception is very narrow—indeed we are aware of no cases that have actually applied this exception. We do not agree that the circumstances of this case, where the permit applicant arguably should have known that some numbers on the original permit application were not accurate, presents one of these egregious exceptional circumstances that "so severely undermine the permit process that the appeal period would not begin until the affected parties have notice of them." *See id.* The Fujas had constructive notice in mid-2019 that the building permit had been issued, and any objections they had to the issuance of that permit should have been brought within forty-five days of that notice.[5] Therefore, their appeal brought in 2020 was untimely.[6]

---

5. It is unclear just what the Fujas would have challenged about the original permit. They have not clearly stated any objection to the permit itself. The Fujas would apparently have no problem with the construction if the Adamses were able to make their land and house match what was approved in the original permit.

6. The Fujas also take issue with the City's transmission of the record to the district court. They argue that because the transmission included a certain document providing a height calculation that had not been provided to them earlier, it "did not afford the Fujas their due process right to address or refute those calculations." But the accuracy of those calculations would have had no impact on whether a land use decision was properly and timely appealed, which was the basis for the summary judgment. We therefore decline to engage further with this argument.

CONCLUSION

¶21    Because the inaction of the City is not a land use decision addressed under the appeals section and because the issuance of the July 5, 2019 building permit was (according to the language of the Fujas' petition) not contested below, we see no error in the district court's grant of summary judgment. We therefore affirm.

———————